136 N.J. Super. 78 (1975)
344 A.2d 341
CY PRESBERG, INDIVIDUALLY AND STANDARD GASKET INC. A NEW JERSEY CORPORATION, PLAINTIFFS,
v.
CHELTON REALTY INC., A NEW JERSEY CORPORATION AND ELLIOT TARADASH AND MAX GROSSMAN, JOINTLY, SEVERALLY AND IN THE ALTERNATIVE, DEFENDANTS.
Superior Court of New Jersey, District Court  Passaic County.
July 11, 1975.
*79 Mr. J. George Ivler appearing for plaintiffs (Mr. Robert B. Feuchtbaum and Mr. Ivler, attorneys).
Mr. Philip Tanis appearing for defendants (Mr. Michael A. Sternick and Mr. Tanis, attorneys).
SUSSER, P.J.D.C.
Plaintiff's legal argument in opposition to defendant's motion for summary judgment presents an issue of first impression. Are the provisions of N.J.S.A. *80 46:8-21.1 applicable to a nonresidential tenancy; that is, may a commercial tenant recover double the amount of his security upon landlord's failure to return the same within 30 days.
Plaintiff, a commercial tenant, leased nonresidential space from defendant landlord. Security was deposited by it for the faithful performance of the lease. It is alleged by plaintiff that it vacated the premises on March 15, 1974 and that within 30 days after the expiration of the term of the lease the landlord-lessor had failed to deliver tenant's security plus its portion of the interest earned thereon less any charges expended in accordance with the terms of the lease agreement. For this failure plaintiff is seeking double the amount of its security deposit.
Defendant-landlord seeks summary judgment on the ground that the statute upon which plaintiff relies is applicable only to residential property. N.J.S.A. 46:8-21.1 reads as follows:
Within 30 days after the expiration of the term of the tenant's lease or licensee's agreement, the owner or lessee shall return by personal delivery, registered or certified mail the sum so deposited plus the tenant's portion of the interest earned thereon, less any charges expended in accordance with the terms of a contract, lease, or agreement. Any such deductions shall be itemized and the tenant or licensee notified thereof by registered or certified mail. In any action by a tenant or licensee for the return of moneys due under this section, the court upon finding for the tenant or licensee shall award recovery of double the amount of said moneys, together with full costs of any action and, in the court's discretion, reasonable attorney's fees.
N.J.S.A. 46:8-26 sets forth the type of premises to which § 21.1 applies.
The provisions of this act shall apply to all rental premises or units used for dwelling purposes except owner-occupied premises with not more than two rental units.
It is plaintiffs contention in opposition to the motion for summary judgment that by use of the phrase "all rental *81 premises" it was the legislative intent to include every type of rental, whether commercial or residential, and that the wording "or units used for dwelling purposes except owner-occupied premises with not more than two rental units," merely limits the type of residential property to which the act is to be applied. Defendant contends, however, that the term, "used for dwelling purposes," refers to both "premises or units" and that the statute is to be applied solely to residential property except owner-occupied premises with not more than two rental units. The interpretation urged by plaintiff appears to be a tortured one not reflective of the legislative intent.
Our courts have uniformly held, in construing a statute with two imperfect expressions, that the court should select that view which accords with the probable legislative intent. Roman v. Sharper, 53 N.J. 338 (1969). Of course, in statutory construction the legislative intent may be implied from language used or inferred on grounds of policy or reasonableness. Harvey v. Essex Cty. Bd. of Freeholders, 30 N.J. 381 (1959).
In construing this statute the task of the court is to seek out the legislative intent, and to that end it should consider any history which may be of aid. State v. Madden, 61 N.J. 377, 389 (1972).
N.J.S.A. 46:8-21.1 (L. 1971, c. 223, § 3) and other similarly landlord-tenant-orientated legislation appear to have been motivated by the recommendations contained in the interim report to the Governor and Legislature of the Landlord and Tenant Relationship Study Commission. Report of Landlord Tenant Relationship Study Commission (April 1970). The clear purpose of this study commission was to suggest legislation to correct many of the inequities existing between landlord and tenant in residential housing. It recognized "that the acute shortage of housing is of such magnitude that the market itself no longer suffices to provide adequate prospects for either the required construction *82 of housing or for the protection of the public interest." Report at 9 (emphasis added). This same conclusion was subsequently expressed as part of the rationale in Inganamort v. Fort Lee, 120 N.J. Super. 286 (Law Div. 1972). As a result of the recommendations of the study commission the Legislature passed not only the subject act but also legislation relating to retaliatory evictions, N.J.S.A. 2A:42-10.10 et seq.; self-help evictions, N.J.S.A. 2A:39-1 et seq.; an increase in the small claims maximum jurisdiction to permit suits for return of security deposits, N.J.S.A. 2A:6-44, and similar statutes within the framework of residential housing abuses.
A study of the Security Deposit Act and its subsequent legislative amendments is even more inducive to a determination that the act was intended to apply solely to residential property. The statute first became effective January 1, 1968. Its provisions were to apply "only to owners of rental property consisting of more than 4 rental units." L. 1967, c. 265, § 8. To correct any misinterpretation that might arise as to its application to property other than residential property, the Legislature a short time thereafter amended the act as follows: "The provisions of this act shall apply only to owners of residential rental property * * * "L. 1968, c. 46, § 1, effective May 22, 1968 (emphasis added). What other purpose would there have been for this amendment than to clearly indicate the legislative intent that the act relating to security deposits was to apply only to residential rental property.
Subsequently, § 8 of the act was again amended to its present posture (L. 1971, c. 223, § 7). In light of the legislative history it would clearly appear that the legislative intent with respect to this amendment was solely to broaden the scope of the act's application so that it applied to all residential property except the small owner-occupied premises with not more than two rental units. To construe otherwise would be wholly inconsistent with the clear intendment of *83 the act, especially in view of the fact that as recently as 1973, when our Legislature took another look at this very same act and once again amended it, the title of the amendatory law read as follows:
An act concerning security deposits made in connection with contracts, leases or licenses, for the use or rental of certain residential real property and amending P.L. 1967, c. 265. L. 1973, c. 195. [Emphasis added]
To hold that the 1971 amendment to § 8 of the Security Deposit Act intended the inclusion of commercial property therein would be a distortion of legislative intent, since the "true meaning of an enactment and the intention of the Legislature in enacting it must be gained, not alone from the words used within the confines of the particular section involved, but from those words when read in connection with the entire enactment of which it is an integral part." Petition of Sheffield Farms Co., 22 N.J. 548, 554 (1956). "The over-all intention of the Legislature is the controlling factor in the interpretation of its enactment." N.J. State Bd. of Optometrists v. Reiss, 83 N.J. Super. 47, 54 (App. Div. 1964). If there is in fact any doubt as to the expressed meaning of § 8 that doubt should be resolved with an interpretation most consonant with the common sense of the situation, and here common sense dictates that the Legislature intended by a series of acts to rectify abuses existing in the housing field. It has been held that, in interpreting a statute, "if a literal reading of a part will lead to a result not in accord with the essential purpose and design of the act, the spirit of the law will control the letter of the law." State v. Campobasso, 125 N.J. Super. 103, 108 (Law Div. 1973); N.J. Builders, etc., Ass'n v. Blair, 60 N.J. 330, 338 (1972); Dvorkin v. Dover Tp., 29 N.J. 303, 315 (1959).
Finally, the plaintiff has raised the spector of equal protection, asserting that the 1971 amendment to § 8 intended *84 the inclusion of commercial rental property and that a contrary interpretation would be a violation of a commercial tenant's equal protection rights rendering the act unconstitutional. Our highest courts have consistently held otherwise. "The question as to the reach of the statute is one of legislative responsibility, essentially outside the judicial realm." Ind. Elect. Ass'n of N.J. v N.J. Bd. of Exam'rs, 54 N.J. 466, 481 (1969). The rule of law has been best expressed in N.J. Chap. American Inst. of Planners v. N.J. State Bd. of Prof. Planners, 48 N.J. 581 (1967), in the following language:
In short, equal protection does not demand immediate logical tidiness; nor is it violated because the legislation as enacted does not bring about the full reform or result intended to be produced. In an area of many competing pressures, the constitution is satisfied if the Legislature, in responding to what it conceived to be living facts calling for regulation, did not disregard reason in drawing its lines. That those lines might have been drawn more suitably in the light of the whole problem is not a matter for judicial re-examination. Classification is a perennial and difficult problem, capable of no doctrinaire solution. Basically the solution resides in the legislative domain and the judiciary will not intrude unless the classes established for separate treatment represent invidious discrimination, that is, treatment which has no rational basis in relation to the specific objective of the regulatory legislation. [602-603]
The Legislature may very well deal with a classification consisting of residential property to the exclusion of nonresidential property to meet what it clearly deemed an existing evil in the housing field.
For the reasons here expressed, the court finds that the provisions of N.J.S.A. 46:8-21.1 are not applicable to commercial property and therefore defendants' motion for summary judgment is hereby granted.