BRANCH BROOK GARDENS, PLAINTIFF, v. MANFRED RAMIREZ, KATHERINE DIBIASE, BERNARD DURANTE, MARGARET GI-UNTA-FINAN, MARILYN LENNON, PATRICIA REESE, JOHN GONNELLA, SUSAN AGRESTA, DEFENDANTS.

District Court Essex County

September 15, 1982.

*Frank Pomaco* for plaintiff (*Gaccione, Pomaco, Patton, Beck, Zampino & Jackson,* attorneys).

*Jack Feinstein* for all defendants.

KIRBY, J. D. C.

These landlord-tenant cases for nonpayment of rent include a common question of law. They have been consolidated for resolution of the single legal issue—"Must a landlord give notice to a tenant before transferring security monies from one bank to another or into a certificate of deposit?" A necessary corollary to this determination, if decided in the affirmative, is whether such monies can then be used for rent by the tenant if such notice is not given by the landlord. This novel issue has not heretofore been resolved in this state in any reported decision or unreported decision known to the court or counsel. All tenants have sent individual notices to the landlord applying their security deposit to rent for August because of the landlord's failure to notify them in advance of the changeover of their security deposits.

As indicated by plaintiff's exhibits, security monies were initially deposited by the landlord with the First National State Bank of N.J. (1972), Fort Lee Savings Bank (1974), and Bogota Savings Bank (1977 and 1980). These monies were in turn transferred to The Trust Company of New Jersey in May 1982. The monies were converted to six-month certificate of deposit passbooks between April 1980 and April 1982 and then returned to the regular passbook savings account. Notice of this conversion and transfer was admittedly not given to the tenants prior to or within 30 days of the conversion; notices after the fact were sent to all tenants on June 15, 1982. Defendant-tenants' monthly rent ranges from $393 to $446. Some of these tenants have lived in the apartment complex since prior to 1972 and at least one since as recently as October 1980.

The Rent Security Deposit Act became effective in New Jersey on January 1, 1968. *N.J.S.A.* 46:8–19 through 26. It has been amended three times since then: *L.* 1971, *c.* 223, *L.* 1973, *c.* 195 and *L.* 1979, *c.* 28. While there have been no New Jersey Supreme Court decisions involving its interpretation or otherwise, our Appellate Division has emphatically and repeatedly stated that the philosophy of the act is to protect tenants from overreaching landlords who seek to defraud tenants by diverting rent security deposits to their own use. *See, e.g., Jaremback v. Butler Ridge Ap'ts,* 166 *N.J.Super.* 84, 87 (*App.Div.*1979).

*N.J.S.A.* 46:8–19 states, in pertinent part:

> . . . such security money . . . until repaid . . . shall continue to be the property of the person making such deposit . . . and shall be held in trust by the person with whom such deposit or advance shall be made . . . and shall not be mingled with the personal property or become an asset of the person receiving the same. The person receiving money . . . shall deposit such money in a banking institution or savings and loan association . . . in an account bearing interest . . . and shall thereupon notify in writing each of the persons making such security deposit or advance giving the name and address of the banking institution in which the deposit of security money is made, and the amount of such deposit.

> .　　.　　.　　.　　.　　.　　.　　.

> The person receiving money . . . shall be entitled to receive as administrative expenses, a sum equivalent to 1% per annum . . The balance of the interest . . . shall belong to the person making the deposit . . . and shall be credited toward the payment of rent due on the renewal or anniversary of said tenant's lease.

> In the event the person receiving a security deposit fails to notify the tenant of the name and address of the banking institution and the amount thereof . . . within 30 days after receipt of same from the tenant, the tenant may give written notice . . . that such security money be applied on account of rent payment or payments due or to become due from the tenant, and thereafter the tenant shall be without obligation to make any further security deposit and the person receiving the money so deposited shall not be entitled to make further demand for a security deposit.

The last paragraph of this section (*L.* 1973, *c.* 195, eff. July 3, 1973) was added by the Legislature, evidently as a result of the decision in *Brownstone Arms v. Asher,* 121 *N.J.Super.* 401 (Cty. D.Ct.1972). The cases of *Delmat Corp. v. Kahn,* 147 *N.J.Super.* 293 (App.Div.1977), and *Frontenac Associates v. Fauerbach,* 148 *N.J.Super.* 376 (Cty.D.Ct.1977), precipitated further amendment

to that same last paragraph by *L.* 1979, *c.* 28, effective 2/22/'79. See Assembly Committee statement to A.1126—*L.* 1979, *c.* 28, found at the end of § 19.

The language in the last paragraph of *N.J.S.A.* 46:8–19 is plain and unequivocal for those situations where the landlord fails to give initial notice to the tenant of the security depository. Such are not the facts in the case at bar. With the exception of Agresta, proper notices were initially given by the landlord to the tenants pursuant to the statute. The language used in the section that monies so received by the landlord must be kept in trust for the tenant and may not be mingled with or become an asset of the landlord indicates a deliberate and conscious effort by the Legislature to fully protect the tenants' monies given as security. I conclude from the use of this language, together with court determinations that this act is remedial legislation, *Frontenac Associates, supra,* that a landlord must give additional notice to the tenant(s) whenever monies are transferred to a different bank or put into certificate of deposits. To hold otherwise would thwart the legislative intent. *Cf. Bradley v. Rapp,* 132 *N.J.Super.* 429, 433 (App.Div.1975).

What, then, is the tenant's remedy when such notice has not been given by the landlord? Tenants argue that they should be able to utilize their security for rent at this point as though the original notice was not given. When *Brownstone Arms, supra,* was decided, there was no provision in the statute specifically allowing a tenant to apply security money to rent. That omission was corrected by the Legislature through the amendment of July 3, 1973, which continues to date. Were it not for § 25 of the statute, the tenants' position might be well taken. *N.J.S.A.* 46:8–25, § 7 of the original legislation in 1968, states:

Any person party to said contract, lease or agreement, or any agent of said person, or any officer of a corporation receiving said monies, who, with knowledge that such monies constitute trust funds, unlawfully diverts or consents to an unlawful diversion of such monies shall be a disorderly person and subject to a fine of not less than $200.00 or by imprisonment for not more than 30 days, or both.

Where there has been a violation of *N.J.S.A.* 46:8–19, as here, "the landlord should be ordered to comply with the act, deposit the security monies as required by law, notify the tenant of the location of the fund, and account for all interest that should have been earned from the time the deposit should have been made. This will effectuate the purpose of the act, which was intended to *protect the security deposit.*" (Emphasis supplied). *Brownstone Arms v. Asher, supra* at 405. The landlord has fulfilled these "requirements" in this case. I cannot find him guilty of any "malicious actions" such as proscribed in *Burstein v. Liberty Bell Village, Inc.,* 120 *N.J.Super.* 54, 59 (Cty.D.Ct. 1972) (return of security deposits).

Judge Huot's reasoning and analysis ten years ago in *Brownstone Arms, supra* remains sound today. He held that this section was the exclusive remedy for a tenant who did not receive the initial notice from the landlord as to the location of the security deposit. I also find that this section is presently the only remedy for the tenant when monies are deposited in a certificate of deposit without prior notice as here. The relief suggested by the tenants and the reasons to support their proposition are better directed to the Legislature and not to the courts.

Judgment for possession will be entered effective September 20 in all cases except Agresta (T–586725). The amount of rent will be as set forth in the respective complaints together with individual costs of $8.90 *as well as* September rent. Any question as to the correct amount of interest to be credited to the individual tenant must await further action between the parties in the event the question cannot be amicably resolved and agreed upon between them.

The Agresta case is dismissed and judgment entered in her favor since there is nothing in the landlord's brief to indicate that she received the necessary notice of her initial security deposit. In addition, defendant's brief contains her certification that she was never given such notice by the landlord.