BRIAN A. ROGERS, PLAINTIFF, v. PETER DONOVAN AND NORMA DONOVAN, DEFENDANTS.

Superior Court of New Jersey
Law Division Special Civil Part
Bergen County

Decided August 26, 1986.

---

*Carpenter, Bennett & Morrissey,* attorneys for plaintiff.
*Peter Donovan* and *Norma Donovan,* defendants, *pro se.*

deCORDOVA, J.S.C.

Is vacation housing a rental premise or unit used for dwelling premises as contemplated by the Rent Security Deposit Act, *N.J.S.A.* 46:8–19 *et seq.,* so as to bring the penalty provision into play. The court thinks not.

This issue comes to the court by way of application for the entry of default judgment. On March 31, 1985 plaintiff, Brian Rogers, entered into a seasonal lease with defendants, Peter

and Norma Donovan. Plaintiff was to occupy certain premises located at Long Beach Boulevard, North Beach, New Jersey, for a period of two weeks beginning August 3, 1985 and ending August 17, 1985. The total rent due for this two-week period was $3,400, utilities included. Under the terms of the written agreement, plaintiff was required to pay a $200 security deposit, a $50 cleaning deposit, and a $100 telephone deposit. On the day of occupancy, plaintiff was to check in by 2:00 p.m. and check out by 11:00 a.m. In addition to the utilities, "linens, blankets, and other such items the tenant desires" were included. All appliances and possibly a television were available for plaintiff's use.

Plaintiff alleges that he has fully complied with all terms and conditions of the lease, and that notwithstanding his compliance and due demand for the return of the deposit, defendants have failed to return said monies. Plaintiff further asserts that defendants failed to notify him of any damage done to the premises after the expiration of the lease either within the 72 hours specified in the contract or the 30–day statutory period, if applicable.

In reliance upon the penalty section of New Jersey's security deposit law, plaintiff seeks judgment in the amount of $989.90 which represents double the deposit monies of $350 or $700, $20.50 in interest, attorney's fees in the amount of $250 and court costs of $19.40.

In his letter brief, plaintiff relies on the language of the statute in asserting that it applies to short-term vacation rentals as well as long-term leases. In order for plaintiff to prevail the court must find that the Legislature meant to include this type of housing in the statute and that plaintiff has successfully proved its case under the statute.

It is uncontroverted that the philosophy of the Rent Security Deposit Act is to protect tenants from overreaching landlords who seek to defraud tenants by diverting rent security deposits to their own use. *Jaremback v. Butler Ridge Apartments,* 166 *N.J.Super.* 84, 87 (App.Div.1979); *Watson v. Jaffe,* 121 *N.J.Su-*

*per.* 213, 214 (App.Div.1972); *Branch Brook Gardens v. Ramirez,* 186 *N.J.Super.* 241, 243 (Cty.D.Ct.1982). The statute provides:

The provisions of this act shall apply to all rental premises or units used for dwelling purposes except owner-occupied premises with not more than two rental units where the tenant has failed to provide 30 days written notice to the landlord invoking the provisions of this act. [*N.J.S.A.* 46:8–26]

Under the canons of statutory construction, a court's duty in construing the language of a statute is to determine the intent of the Legislature, *AMN, Inc. v. South Brunswick Leveling Bd.,* 93 *N.J.* 518, 525 (1983), and to enforce the legislative will as written. *Dacunzo v. Edgye,* 19 *N.J.* 443, 451 (1955) and *Hoffman v. Hock,* 8 *N.J.* 397 (1952) cited in *Salb v. Lemoine Ave. Associates,* 178 *N.J.Super.* 36, 40 (App.Div.1981). The statute does not explicitly include or exclude vacation housing within its ambit nor is there any case law on point. Thus, in construing this section, the task of the court is to seek out the legislative intent, and to that end it should consider any history which may be of aid. *State v. Madden,* 61 *N.J.* 377, 389 (1972); *Presberg v. Chelton Realty,* 136 *N.J.Super.* 78, 81 (Cty.D.Ct. 1975).

New Jersey's Legislature chose to change the common law rights and remedies of landlords and tenants through the promulgation of the Rent Security Deposit Act and other related laws. This legislation was borne out of recommendations made to the Governor and the Legislature by the Landlord-Tenant Relationship Study Commission established in 1969.[1] The study commission was to suggest legislation to correct the inequities existing between landlords and tenants in residential housing. *Presberg v. Chelton Realty supra* at 84.

The focus of the study was the housing crisis facing the State of New Jersey. The context within which the term "housing"

---

[1]To achieve as broad a representation as possible, a 15–member commission was formed consisting of two senators, two assemblypeople, three members representing tenants' interests, three representing landlords' interests, and five members from the public-at-large. Five public hearings were conducted at

was used was "minority housing" and "housing for the poor." 1 *Landlord-Tenant Relationship Study Commission Public Hearings* 2 (1969) [hereinafter cited as Public Hearings]. The target population of the study was that group of low-to moderate-income families who were caught in the throes of the existing housing crisis. *Id.* at 11.

It was found that the target population was expanding at a rate which outpaced the number of available apartments. The development of new housing for this group was grinding to a standstill. As demand for rental housing was exceeding supply, the estrangement between landlord and tenant was progressively increasing. The existing remedies at law were inadequate to curb the rising tide of abuses.[2]

On the issue of security deposits, the commission specifically addressed such problems as the arbitrary withholding of security deposits by landlords, the failure to disclose the whereabouts of security deposit monies, the loss of interest on the amount deposited as security, the lack of a clear definition for the term "wear and tear." *Interim Report, supra* at 17–18. It was against this backdrop that the Legislature promulgated current landlord/tenant law.

It does not appear from the report of the study commission nor from the public hearings that vacation housing was considered as part of the overall scheme needed to remedy a

which various experts in law, economics, taxation, finance, and construction testified. In addition, representatives from both landlord and tenant groups were heard. Letter from William Goldberg, *Landlord Tenant Relationship Study Commission Interim Report* (1970) [Hereinafter cited as Interim Report].

[2]The commission found an abundance of tenant abuses such as, lease breaking, vandalism, rule breaking, rent skips, and retaliation in the form of rent strikes. Just as notable were abuses by the landlords which included oppressive leases, refusal to tender written leases, issuance of notices-to-quit without cause, unlawful distraints for rent, retaliatory evictions, excessive rent increases, inadequate maintenance, code violations, and refusal to return security deposits. *See Interim Report, supra* at 11–21.

perceived social problem, namely, the housing crisis. Nonetheless, the overriding principal of statutory construction directs that in the absence of an explicit indication of special meaning, words will be given their ordinary and well-understood meaning. *Service Armament Co. v. Hyland,* 70 *N.J.* 550, 556 (1976). Legislation should be given a reasonable meaning; interpretations leading to absurd results are to be avoided. *State v. Gill,* 47 *N.J.* 441, 444 (1966).

As the subject property is a single-family dwelling, defendants would have been required to deposit any security deposit monies in an interest-bearing account in one of the prescribed financial institutions and would have had to have given notice of the location and amount of the deposits to plaintiff within 30 days of the receipt of the monies. *N.J.S.A.* 46:8–19(b). Defendants would have been entitled to charge administrative costs against the accrued interest. Should a person fail to comply with this procedure, the tenant may give written notice to the person receiving the same that such security money be applied on account of rent payment or payments due or to become due from the tenant, and thereafter the tenant shall be without obligation to make any further security deposit and the person receiving the money so deposited shall not be entitled to make further demand for a security deposit. [*Ibid.*]

At the time of the formation of this agreement, both parties determined that the length of the stay was two weeks. If we apply the facts to the law defendants would have had 30 days from August 3 to satisfy the directives of the act. After the 30–day period plaintiff's only remedies would have been to apply the security deposit monies against rent payments and to refuse any demand for further security deposits.

■ It is the court's opinion that if we were to include all such vacation housing arrangements in the statute the result would be confusing for both parties. In general, vacation housing lasts for a few days to a few months. Similar to commercial hotels and motels, payment is expected in full or guaranteed on or before the stay begins. Based on legislative

history and the application of these facts to the statute, this court finds that the instant case does not fall within the overall statutory scheme of *N.J.S.A.* 46:8–19 *et seq.* The court recognizes that the lease agreement submitted by plaintiff and signed by the parties is replete with landlord/tenant nomenclature, to wit, "rent," "tenant," "security deposit." But, calling it so doesn't make it so within the scope of the security deposit law. To do so would be absurd.

The agreement between the parties states under "special conditions" plaintiff's obligation to pay a $200 security deposit to owner at the time of check-in, "$50 cleaning deposit—payable to owner," and a $100 phone deposit." Plaintiff asserts that deposits were advanced "in order to assure proper performance of the terms of the lease." It is not clear from these minimal facts that all monies are security deposits within the meaning of that term. The court does not accept that defendants received a total escrow fund or "deposit" in the amount of $350. However, there is no information from plaintiff about the nature of the cleaning and telephone deposits other than the assertion that "plaintiff left the premises in as good or better condition as when he leased them" and that he has a right to their return. We have insufficient information to determine either the intended use and purpose of the cleaning and phone deposits or the conditions under which these monies were to be returned, if returnable; except, we assume that the phone escrow was taken to protect defendants against any toll calls made by plaintiff. Normally, the tenant supplies the telephone, not the landlord.

The court also notes the special effects of the Anti-Eviction Act, *N.J.S.A.* 2A:18–53 *et seq.*, and the act concerning issuance of warrants for removal in actions to recover possession, *N.J. S.A.* 2A:42–10.17, upon seasonal housing. In the Anti-Eviction Act, "no lessee or tenant" can be removed unless good cause is established on one of the statutorily enumerated grounds. *N.J. S.A.* 2A:18–61.1. The act excludes a "guest house or part thereof rented to a transient guest or seasonal tenant." *Ibid.*

Pursuant to summary dispossess law, we seem to permit jurisdiction in a landlord/tenant action where a seasonal tenant is disorderly, disturbing the neighbors, or damaging the property. *N.J.S.A.* 2A:42–10.17. But the removal is accelerated and the special more lenient procedures of *N.J.S.A.* 2A:42–10.16 are eliminated. *N.J.S.A.* 2A:42–10.17 defines "seasonal use" as one "for a term of not more than 125 consecutive days for residential purposes by a person having a permanent place of residence elsewhere." These acts, read *in pari materia* with *N.J.S.A.* 46:8–19 *et seq.*, further evidence legislative intent that vacation rental of any property of less than four-months duration should not receive any special consumer benefits.

■ Thus, we hold plaintiff is entitled to return of the total escrow of $350; no defense having been asserted. The plaintiff also seeks award of a counsel fee pursuant to the special provision of the security deposit law, *N.J.S.A.* 46:8–21.1, which allows same at the court's discretion. However, as expressed aforesaid, said law does not apply and since this subject is not within the purview of *R.* 4:42–9, the application for attorney's fees is denied. Costs and statutory attorney's fees as per the Special Civil Part shall be allowed.