148 N.J. Super. 376 (1977)
372 A.2d 683
FRONTENAC ASSOCIATES, PLAINTIFF,
v.
GRACE FAUERBACH, DEFENDANT.
Superior Court of New Jersey, District Court  Bergen County.
March 22, 1977.
*377 Mr. Alan Paul Weinraub, attorney for plaintiff.
Defendant appeared pro se.
O'HALLORAN, J.D.C.
This is a summary action for recovery of possession of rented residential premises. The first count of the complaint, which sought possession on the ground that defendant tenant had refused to execute a lease proffered by plaintiff landlord, was dismissed without prejudice for reasons not germane to the second count, which seeks possession on the ground of nonpayment of rent.
Defendant is in possession of an apartment at 80 Prospect Avenue, Hackensack (a multi-family dwelling) as a month-to-month tenant holding over after an original written lease which expired on July 31, 1973. The present monthly rent is $232.10. Plaintiff holds a security deposit in the sum of $348.15, which is 1 1/2 times the monthly rent. Plaintiff claims defendant has failed to pay the rent for one-half of January and all of February 1977. Defendant contends that the rent should be deemed paid because the security deposit in the same amount is improperly held by the landlord.
This controversy involves an interpretation of a provision of the Rent Security Deposit Act, N.J.S.A. 46:8-19 to 26. *378 This act, which applies to residential rental premises other than owner-occupied two-family houses, permits the landlord to require a security deposit up to a sum equal to 1 1/2 times the monthly rent. The landlord holds the security in trust, must deposit it in a banking institution at interest, and within 30 days after expiration of the lease must return the deposit with accrued interest to the tenant and itemize in writing any deduction taken from the deposit. Effective July 3, 1973, N.J.S.A. 46:8-19 was amended to provide that if the landlord fails to notify the tenant of the name and address of the banking institution where the security is deposited, and the amount thereof, within 30 days after receipt of same, then the tenant may give written notice to the landlord that the security is to be applied on account of rent due or to become due, and
* * * thereafter the tenant shall be without obligation to make any further security deposit during the term of his lease and the [landlord] shall not be entitled to make further demand for a security deposit. [Emphasis supplied].
In August 1976 these same parties were before this court in an action seeking possession for failure to pay rent. It appeared then that plaintiff had failed to give defendant the required notice as to the place of deposit of her security. The court permitted defendant at the hearing to prepare and hand to plaintiff's attorney a written demand that her security be applied to the rent due, which was in the same amount as the security deposit, whereupon that action was dismissed.
Thereafter, sometime in October or November 1976, defendant's sister, acting on behalf of defendant but without her knowledge, paid a sum of money to plaintiff which included some outstanding rent as well as security deposit in the sum of $348.15. Defendant contends that in view of the statutory language quoted above, plaintiff was not entitled to again demand security from her. Plaintiff points to the provision in the statute which gives defendant the right not to make any further deposit during the term of her lease, *379 and argues that since defendant is a holdover tenant each month is a separate lease term and after the expiration of any month plaintiff can demand a security deposit.
It is clear that the Rent Security Deposit Act is remedial legislation enacted to protect tenants from those overreaching landlords who diverted security deposits to their personal use. Watson v. Jaffe, 121 N.J. Super. 213 (App. Div. 1972). Initially it was held that a violation of the statute did not entitle the tenant to have the security applied to outstanding rent. Brownstone Arms v. Asher, 121 N.J. Super. 401 (Cty. D. Ct. 1972). The Legislature then enacted the amendment effective July 3, 1973 (L. 1973, c. 195, § 1) allowing the tenant in such circumstances to have the deposit applied to his rent and to be without further obligation to make any further security deposit "during the term of his lease."
In construing any legislation the following general principles set forth in Watt v. Franklin Mayor and Council, 21 N.J. 274 (1956), are most appropriate:
In every case involving the application of a statute, it is the function of the court to ascertain the intention of the Legislature from the plain meaning of the statute and to apply it to the facts as it finds them, [citations omitted]. A clear and unambiguous statute is not open to construction or interpretation, and to do so in a case where not required is to do violence to the doctrine of the separation of powers. Such a statute is clear in its meaning and no one need look beyond the literal dictates of the words and phrases used for the true intent and purpose in its creation. But few statutes can boast of such clarity or stand that test through every inquiry, and the court must take the responsibility of determining in each case presented whether the particular statute in its application to it, is clear and unambiguous.
The need for construction arises in two instances. As we move away from the ideal of a clear and unambiguous statute we find statutes that on their face are clear and unequivocal but in light of related legislation and of the surrounding facts and circumstances of the case in which it is applicable, the true meaning becomes indefinite or obscure. In these instances it may be the plain meaning of the words themselves that casts doubt as to the true intention of the Legislature, or often it is the absurdity of the result flowing from a literal application of that plain meaning that causes wonder *380 as to the true purpose of the enactment. Then, too, there are those less difficult instances in which the meaning of a statute is obviously obscure or doubtful, where the language used is per se capable of dual interpretation. When these circumstances appear the court is not only at liberty to interpret the statute but it is its solemn duty to seek out and give effect to the legislative intent evident from the aids available to it. [Citations omitted] [at 267]
The statutory language in question here is clear on its face but when viewed in light of the surrounding facts and circumstances of this case becomes obscure. In the situation where a month-to-month tenant's security has been applied to rent because of a violation by his landlord of the Rent Security Deposit Act, did the Legislature intend that for the following month the landlord could require a new deposit on the theory that the following month was a new lease term? Such a literal application of the words of the statute produces an absurd result and frustrates the obvious purpose of the legislation which was to penalize a landlord who violates the act and who thereby forfeits the right to continue to hold his tenant's security deposit. The court should give effect to this legislative intent and not permit plaintiff to require a further security deposit from defendant.
There is another reason why plaintiff here should not be permitted to demand a further security deposit. The security here was deposited by defendant pursuant to the terms of a written lease which expired July 31, 1973. If the landlord's violation occurred during the term of the original written lease, it would be clear that it could not require an additional security deposit during the term of that lease. When defendant held over after the term of the written lease, she became a tenant from month to month. N.J.S.A. 46: 8-10. Such a hold-over tenancy is presumed to be upon the same terms as the original lease, so far as they are applicable to the new tenancy. Heyman v. Bishop, 15 N.J. Super. 266 (App. Div. 1951). Therefore, since the landlord's right to hold the security deposit arose under the expired written lease and continues during the holdover tenancy, it is logical to conclude that the landlord's forfeiture of the right to hold *381 that deposit should also continue through the hold-over tenancy, and that the Legislature so intended.
It is the specific holding of this case that when a landlord forfeits the right to hold security deposited under a written lease because of a violation of the Rent Security Deposit Act, the tenant shall thereafter be without obligation to make any further security deposit either during the term of the written lease or during any hold-over tenancy which follows it. Whether the landlord can now offer to the tenant a new written lease containing a provision for a security deposit and then seek to dispossess the tenant under N.J.S.A. 2A:18-61.1(i) if she refuses to execute it, is a question best left for decision on another day.
Since the security deposit is improperly held by the plaintiff, it will be applied on account of defendant's rent. Since the deposit and alleged unpaid rent are in the same amount, the court finds that there is no rent due and owing, and the second count of the complaint is dismissed.
Judgment of dismissal of the entire complaint is entered in favor of defendant.