880 A.2d 496

PRIT SHAH CHATTERJEE AND RONO CHATTERJEE, PLAINTIFFS, v. KAREN MARIE IERO, GENEVIEVE GLASGOW, H.G.K. REAL ESTATE VENTURES INC. D/B/A RE/MAX ASSOC., YALE ENTERPRISES, L.L.C. D/B/A RE/MAX SUBURBAN, WINDSTAR ASSOC., L.L.C. D/B/A RE/MAX MAIN ST. REALTY, HELEN KLEIN, AND MARIANNE HOLLOWAY, DEFENDANTS.

Superior Court of New Jersey
Law Division
Burlington County

Decided March 7, 2005.

[12] Assuming for argument's sake that the federal constitution does not support our judgment, I would conclude that the same result is compelled by art. I, ¶s 9 and 12 of our state constitution. It would be appropriate to interpret our state constitution expansively in light of the fact that no death row inmates have been executed in New Jersey since the Supreme Court lifted its moratorium nearly thirty years ago. That fact suggests that standards of decency in New Jersey have evolved to a point where executions should not be expected to occur in this State except when the guilt and death eligibility of the defendant have been resolved after only the most exacting examination.

*Tracy A. Siebold, Flaster Greenbaum, P.C.*, for plaintiffs.

*Michael S. Greenblatt, Greenblatt & Lieberman*, for defendants Karen Marie Iero and Genevieve Glasgow.

*Christopher B. Block, L'Abbate, Balkan, Colavita & Contini, L.L.P.*, for defendants H.G.K. Real Estate Ventures Inc. d/b/a Re/Max Assoc. and Helen Klein.

Yale Enterprise, pro se (bankrupt out of case early).

*Frank P. Menaquale, Jr., Murphy & O'Connor*, for defendants Windstar Associates, L.L.C. and Marianne Holloway.

HOGAN, J.S.C.

The inquiry before the court is whether a residential lease provision that requires the tenant to pay a sum of money described in the subject lease at various locations as a "refundable pet deposit", a "$1,500 pet security" and a "$1,500 pet deposit" violates the statutory proscription against a landlord requiring more than one and one-half times the monthly rental as security. The pet deposit, when added to the $2,175.00 security deposit in the subject lease, exceeds the one and one-half months' rent limitation under the statute. In other words, are provisions in a residential lease that require separate or sub-divided security deposits for pets or for other purposes controlled by *N.J.S.A.*

46:8–21.2?[1] This issue has not been specially addressed by our courts.

*N.J.S.A.* 46:8–21.2 in pertinent part states:

> An owner or lessee may not require more than a sum equal to one and a half times one month rental according to the terms of the contract, lease or agreement as a security for the use or rental of real property used for dwelling purposes.

The undisputed material facts are that a residential lease was entered into between Prit Shab and Rono Chatterjee, plaintiffs, the owners of the subject premises and defendants, Karen Marie Iero, the tenant, and Genevieve Glasgow, the lease guarantor, on June 6, 2003. The lease was a "standard" form residential lease agreement for condominiums and cooperatives, which was approved by the Attorney General. The lease contained blank areas to be completed by the parties. The monthly rent was $1,450. It was in the blanks that the parties modified the document to include security.

Section 3 of the lease in applicable part states:

> The security deposit and the initial payment under terms of this lease, must be in cash or certified funds payable as follows: *$500 non-refundable pet deposit, $1500, refundable pet deposit, $2175 security deposit.*

Section 6, entitled "SECURITY DEPOSIT," states:

> The tenant shall deposit with the Landlord the sum of $3675.00* as security for the tenants performance of its obligations under this lease, including the repair of any damage caused by the Tenant ("Security Deposit"). If the Landlord's interest in the property is transferred, the Landlord shall (a) turn over the Security Deposit to the new Landlord, and (b) notify the tenants of the name and address of the new Landlord. Notice must be given within 5 days after the new Landlord acquires title to the premises.

---

[1] On the day set for trial, because of weather and other issues, it was determined that the trial could not proceed on that day. However, counsel for the parties agreed that they wished to present oral argument on the above question, as the issue had been briefed in pretrial submissions. While formal motion papers have not been submitted, all counsel agreed without objection to have the court rule on the issue as a summary judgment motion. The relevant facts were stipulated. As all parties were in agreement, the court agreed and conducted oral argument. Defendant, Yale Enterprises, L.L.C., was previously dismissed by stipulation on January 13, 2005.

> The Security Deposit shall be held in trust by the Landlord during the term of this lease. The Landlord may deduct any costs incurred for the Tenant's failure to comply with any provision in this lease. If the costs exceed the Security Deposit, the Tenant shall pay the additional amount to the Landlord upon demand. If the Landlord has used any part of the Security Deposit during the term, the Tenant shall promptly pay the Landlord the amount spent. The Security Deposit is not to be used by the Tenant for the payment of rent without the Landlords written consent. * $2,175. Security Deposit + $1,500. Pet Deposit

> Within 30 days after the end of the term, or 30 days after surrendering premises, which ever is later, the Landlord shall return to the tenant the Security Deposit, less any deductions made under this lease or authorized by law and prove the tenant a statement itemizing the deductions. This shall be done by personal delivery, registered mail or certified mail.[2]

Section 27 of the lease, entitled "ADDITIONAL AGREE-MENTS," states:

> The Tenant and Landlord hereby agree to the following additional contract provisions:

> A) $1500.00 pet security will be refundable only if the dog does not do any damage that exceeds $500. If damage exceeds $500. then pet security will be used to cover damage

For purposes of this motion, plaintiffs brought suit against defendants for rents and damages, and defendants, Iero and Glasgow, counterclaimed on grounds of habitability and violation of the security deposit law among other causes of action.[3]

Motions for summary judgment are governed by *R.* 4:46. The September 2000 amendment of *R.* 6:1–1, the applicability of Part IV rules, exempts summary motions made in the Special Civil Part from the requirements of *R.* 4:46–2(a) and (b) requiring that the motion and response thereto include a statement of material facts, as it is deemed unnecessary in most cases within the Special Civil Part's jurisdiction.

---

[2] The remainder of Section 6 is not relevant and thus is not reproduced.

[3] There was an amended complaint and third-party actions as well, but they do not affect the determination in this case. For present purposes as used in this decision, the term 'plaintiffs' is inclusive of the third-party defendants all of whom joined in the argument in support of a holding that the pet security deposit was not subject to the provisions of the security deposit law, *N.J.S.A.* 46:8–21.2.

The case of *Brill v. Guardian Life Ins. Co. of Am.*, 142 *N.J.* 520, 666 *A.*2d 146 (1995), set forth a new standard for a trial court to apply when determining whether an alleged disputed issue of fact should be considered "genuine" for purposes of *R.* 4:46–2. The *Brill* Court stated that a determination whether there exists a "genuine issue" of material fact that precludes summary judgment requires the motion judge to consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational fact finder to resolve the alleged disputed issue in favor of the non-moving party. *Id.* at 540, 666 *A.*2d 146. The *Brill* Court further clarified that "if there exists a single, unavoidable resolution of the alleged disputed issue of fact, that issue should be considered insufficient to constitute a 'genuine' issue of material fact for purposes of Rule 4:46–2." *Ibid.* Rather, when the evidence "is so one sided that one party must prevail as a matter of law," the trial court should not hesitate to grant summary judgment. *Ibid.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 *U.S.* 242, 252, 106 *S.Ct.* 2505, 91 *L.Ed.*2d 202 (1986)). No material facts on this issue are in dispute.

Plaintiffs' argument is that the pet security deposit, as provided for in this case, is not security that is covered by the security deposit law. They assert the security deposit was an agreement separate and apart, and not intended by the parties to be covered by the one and one-half month limitation on the holding of security deposit in residential leases. In support of the argument, they point to the language in the lease and the fact that the pet deposit language and monetary amount is set apart from the remaining security deposit.[4] They also point to the fact that defendants paid the deposits with separate checks. One check for $2,175, with the notation "refundable security deposit," and a second check for $1,500, with the notation "refundable pet deposit." There also was

---

[4] Though in fact at Section 6, the pet deposit is combined with the general security deposit.

a third check paid for $500, with the notation "non-refundable pet deposit".[5]

Plaintiffs' citing *N.J.S.A* 46:8–19 further argued that since the wording of pet security deposit in the lease limited the use of the security deposit only to pet damage, that it was not a security deposit to secure the full performance of the lease, such as payment of rent, and other damages, and thus is not to be included in the one and one-half month deposit calculation required by the statute. Plaintiffs also argue in their brief that ". . . there is nothing in the statutes which state that a landlord cannot obtain a separate security deposit for pets to make sure pets do not damage a landlord's property."

Defendant-counterclaimants argue in the opposite on all these assertions. As legal support, plaintiffs cite *Durante v. Gadino*, 157 *N.J.Super.* 132, 384 *A.2d* 575 (1978). Plaintiffs' reliance on *Durante* is misplaced. *Durante* provided that monies received by the landlord at the inception of the lease for specific purposes and which are *not* refundable and which are not excessive or unreasonable in relation to actual costs do not constitute security under the security deposit law.

While the lease in this case required the payment of the $500 *non-refundable* pet deposit, that fact does not add support for plaintiffs' position since the additional $1,500 pet security deposit at issue here was *refundable*.

■ Likewise, both plaintiffs and defendants, for different reasons, also rely upon a non-published case, *Rura v. Bennett*, No. A–1466–99T2 (App.Div. Jan. 12, 2001). A non-published case is not binding on the court. Even if considered as a secondary research aid, the case is more supportive of defendants' position. *R.* 1:36–3 and comment 2. The pet deposit in *Rura* was included in the general security deposit.

---

[5] It was agreed by counsel that the $500 non-refundable deposit was not a security deposit, but a payment to the landlord.

*N.J.S.A.* 46:8–21.2 is titled *"Limitation* on amount of deposit" (emphasis added).

Absent specific justification otherwise, the general rule of construction of a statute is to ascribe the plain meaning of the words expressed in the statute. Clearly, the title to the statute using the word "Limitation" demonstrates that the Legislature was seeking to limit or cap the amount of security that a residential landlord could extract from a tenant to secure performance of the lease agreement.

■ Plaintiffs' parsing of the lease falls short of supporting their position that the pet security was only for "pet damage" and not for general damage and that it is thus outside the limitation of the security deposit law. Provisions such as *N.J.S.A.* 46:8–21.2 are remedial in nature to prevent abuses. The Legislature determined that landlords of residential dwellings should only be allowed to hold as security an amount limited to one and one-half months' rent.

■ Plaintiffs further argument that the parties intended the pet deposit to be outside the security deposit law would be a factual issue except that the parties' intention is not material to resolving this issue. *N.J.S.A.* 46:8–24, entitled *Waiver by Depositor Prohibited,* states:

> Any provision of such a contract, lease or agreement whereby a person who so deposits or advances money waives any provision of this act is absolutely void.

While the language of the lease between these parties does not expressly waive the security deposit provision, the landlord cannot use the existing contractual language to argue that the tenants (depositor) wanted the provision, which would be in effect a waiver of their rights.

Because of the non-waiver statutory provision in *N.J.S.A.* 46:8–24, the Legislature has placed the exclusive burden on a landlord to ensure compliance with the security deposit law. Owners who wish to rent residential dwellings are obligated to be familiar with

these statutory provisions, which were intended to protect unsuspecting tenants from the potential of financial abuse.

A landlord and tenant are certainly free to negotiate the use of a security deposit that is refundable and contingent upon contractual performance. A landlord and tenant may even agree on the scope of damages that apply to the security deposit for which the money is being held. Part of the security deposit, for example, may be held exclusively for pet damage. Under no circumstances, however, can the total security deposit held for performance of all or any part of the lease exceed the statutory limitation of one and one-half months' rent.

Sub-dividing the security deposit amount in the lease, as was attempted in the instant case, into parts (whose total exceeds the limitation) attempts to circumvent the statutory limitation. Those sub-divided sums are still being held to secure contract performance for the use of the property and their return to the tenant is contingent on performance and thus is "security" under the expressed limitations of *N.J.S.A.* 46:8–21.2. To permit such a practice of sub-dividing security deposits would be an end run and would make a sham of the statute and thwart the legislative intent.

For the reasons set forth above, the court holds that the security deposit lease provisions in the instant case violate *N.J.S.A.* 46: 8–21.2 in that they require security in excess of one and one-half months' rent. Partial summary judgment in favor of defendant-counterclaimants is entered on that issue.

The remaining issues, including which parties will be held liable,[6] the damage and habitability claims are reserved for trial. Counsel for defendant, Iero, shall prepare an order consistent with this opinion within ten days.

---

[6] Plaintiffs' amended complaint asserts liability against third-party defendants.