966 A.2d 500 (2009)
406 N.J. Super. 71
Kelly REILLY and Kayla Scheckel, Plaintiffs-Appellants,
v.
Marc WEISS, Defendant-Respondent.
Docket No. A-5065-07T1
Superior Court of New Jersey, Appellate Division.
Submitted December 17, 2008.
Decided March 24, 2009.
*501 Feinstein, Raiss, Kelin & Booker, attorneys for appellants (Robyn E. Latman, on the brief).
Marc Weiss, respondent, pro se.
Before Judges PARRILLO, LIHOTZ and MESSANO.
The opinion of the court was delivered by
MESSANO, J.A.D.
Plaintiffs Kelly Reilly and Kayla Scheckel appeal from the May 15, 2008 order of the Special Civil Part entering judgment in their favor in the amount of $375.14. They contend that the judge 1) "misapplied" the Security Deposit Act, N.J.S.A. 46:8-19 to -26 (the SDA); and 2) erred in concluding their landlord, defendant Marc Weiss, had met "his burden of proof" regarding the costs of repairs required as a result of damage caused by plaintiffs to the leased premises. We have considered these arguments in light of the record and applicable legal standards. We affirm in part, reverse in part, and remand for the entry of a modified judgment in favor of plaintiffs.

I.
Plaintiffs filed their complaint in the Special Civil Part Small Claims Division seeking $5000 in damages, alleging they paid defendant $3562.50 as a security deposit pursuant to a written lease for the second-floor apartment located at 280 Claremont Avenue, Montclair.[1] Plaintiffs claimed that they vacated the premises on January 3, 2008, that more than thirty days had elapsed, and that defendant had not returned their deposit. Although plaintiff's claim, if successful, would have exceeded $5000, they submitted the dispute to the limited jurisdiction of the Small Claims Division by waiving any possible excess recovery.[2]
*502 Represented by counsel, both plaintiffs testified at trial, identifying the lease for the apartment, which commenced on August 1, 2007, at a monthly rent of $1425, and terminated on July 31, 2008. Although the lease prohibited the keeping of pets, the parties initialed a handwritten modification permitting "[two] cats [to] be kept unless an issue arises." Plaintiffs testified they tendered $3562.50 as a security deposit, "a month and a half [of rent] plus a pet deposit, an extra month." Problems arose between plaintiffs and defendant, and plaintiffs moved out of the premises, by mutual consent, on January 31, 2008, never receiving any of their deposit monies from defendant.
Defendant appeared pro se and testified that on February 28, 2008, he corresponded with plaintiffs' attorney. The letter indicated that plaintiffs had not "provided a forwarding address upon departure to send their [r]ent [s]ecurity [d]eposit reconciliation to." Attached to the letter were various bills and estimates from contractors and Public Service Electric & Gas Co. indicating utility expenses left unpaid by plaintiffs, and repair costs occasioned by plaintiffs' damage to the property. In short, defendant claimed that the entirety of plaintiffs' security deposit, which had accrued interest and was now $3577.56, was insufficient to defer the combined costs for the expenses and repairs. Defendant claimed plaintiffs owed him $58.39.
Defendant testified using photographs 1) depicting stains on the floors caused by plaintiffs or their pets which required the apartment to be re-carpeted; and 2) showing damage caused by plaintiffs' smoking in the apartmentsomething prohibited by the leaserequiring it to be re-painted. He testified that plaintiffs also broke a storm window that needed to be replaced. Defendant acknowledged that the actual costs for the painting was $245.96 less than the amount contained in his February 28 letter. On rebuttal, plaintiffs again testified and claimed they had not caused any of the damages of which defendant complained.
The judge determined that plaintiffs had caused the broken storm window, "smoke damage," and damage to the carpets. Noting that the calculations contained in defendant's February 28 itemization letter needed to be redone "due to the overestimate of the amount that it would cost to paint," the judge concluded that in fact defendant had "wrongfully withheld" $187.57 of plaintiffs security deposit. Pursuant to the SDA, she doubled that amount and entered judgment in plaintiffs' favor for $375.14.
Plaintiffs' counsel objected. She argued that pursuant to Chatterjee v. Iero, 380 N.J.Super. 46, 880 A.2d 496 (Law Div. 2005), it was unlawful for defendant to have "subdivided" the security deposit required from plaintiffs, i.e., "calling one month['s] [amount] a pet deposit and one and a half times the monthly rent [a] security deposit." She argued that "[defendant was] holding two and a half times the monthly rent, when the [SDA] only allows for one and a half times the monthly rent." Plaintiffs claimed that while the SDA permits any security in excess of the statutory limit to be applied to a tenant's monthly rental obligation, in this case, because they had already vacated the premises, the proper remedy was to view the excess security deposit as "wrongfully held security."
*503 The judge responded, "You have my findings of fact for the record. Why don't you leave me the law, because I'm not following you at all, and I will look into it and I will mail out the order." However, after a pause, the proceedings continued. In apparent reference to Chatterjee, the judge noted, "[i]t's Law Division. It's not binding on me.... So, I'm going to stick with my original order, which was $375.14." The judge continued, "I don't see that there's any reason why if the landlord charged too much security deposit, and the tenants are getting the full ... benefit of it, that there's a penalty barring any nefarious purpose by the landlord." She entered the order under review, and this appeal ensued.

II.
Plaintiffs contend that defendant "failed to meet his burden" of demonstrating that any damage to the unit was caused by them during their tenancy, and they are entitled to the full amount of damages sought by their complaint because the entire security deposit was "wrongfully withheld." Alternatively, plaintiffs argue that the judge misapplied the SDA, and because defendant required them to post an amount of security that exceeded the statutory limits, the judge "should have found that [defendant] was required to return to [plaintiffs] this additional amount of security, subject to doubling."

A.
We can quickly dispatch with plaintiffs' initial contention. Our review of the factual findings made by the trial judge in a non-jury trial is quite limited. Estate of Ostlund v. Ostlund, 391 N.J.Super. 390, 400, 918 A.2d 649 (App.Div.2007). "`[W]e do not weigh the evidence, assess the credibility of witnesses, or make conclusions about the evidence.'" Mountain Hill, L.L.C. v. Township of Middletown, 399 N.J.Super. 486, 498, 945 A.2d 59 (App.Div. 2008) (quoting State v. Barone, 147 N.J. 599, 615, 689 A.2d 132 (1997)). In general, the judge's factual "findings ... should not be disturbed unless they are so wholly insupportable as to result in a denial of justice[.]" Rova Farms Resort, Inc. v. Investors Ins. Co., 65 N.J. 474, 484, 323 A.2d 495 (1974).
In this case, the trial judge had the opportunity to hear the testimony of all parties to the lease. She was able to consider the documentary and photographic evidence supplied by defendant. Lastly, and perhaps most importantly, she had the opportunity to assess the demeanor of the witnesses and judge their credibility as to the critical issue in the case, i.e., did plaintiffs cause the damage as alleged by defendant?
We find no basis to reach a different conclusion to that essential question than did the trial judge. She found plaintiffs had indeed damaged a storm window in the apartment, requiring its repair at the cost of $27.82. She further found that plaintiffs or their pets had caused damage to the carpet in the apartment requiring its replacement at a cost of $1975.65. The judge accepted defendant's contention that $107.48 of the January utility bill for the premises reflected plaintiffs' responsibility. And, finally, she concluded that plaintiffs' smoking in the apartment, as well as a toilet blockage that damaged the ceiling of the apartment below, justified defendant's decision to paint the premises at a cost of $1279.04. In sum, we accept the judge's finding that plaintiffs were responsible to defendant for unpaid expenses and damages in the amount of $3389.99, thus rejecting plaintiffs' contention that the entirety of their security deposit was wrongfully withheld by defendant when they vacated the premises.

*504 B.
We turn now to the more problematic issue plaintiffs raise. In order to properly consider the argument, we note some additional factual findings implicitly made by the trial judge and undisputed by the parties. First, at the initiation of the lease, plaintiffs tendered and defendant accepted $3562.50, an amount equal to two-and-one-half times the monthly rent. Second, as of February 28, 2008, when defendant sent the security deposit reconciliation letter to plaintiffs' counsel, the deposit had increased because of accrued interest to $3577.41. Plaintiffs contend that defendant violated the SDA by demanding a deposit that exceeded the statutory amount by $1425. They argue that they are entitled to double that amount plus attorneys fees pursuant to N.J.S.A. 46:8-21.1 because these were monies "wrongfully withheld" by defendant. Yi v. Re/Max Fortune Properties, Inc., 338 N.J.Super. 534, 538, 770 A.2d 738 (App.Div.) certif. denied, 169 N.J. 610, 782 A.2d 428 (2001).
It is not entirely clear from the judge's brief comments what reasoning she employed in rejecting this argument. We assume by indicating that even "if the landlord charged too much security [ ]," plaintiffs were "getting the full ... benefit of it," the judge viewed the situation as one in which defendant was making a claim for damages, and plaintiff's tendered security deposit was being applied as an offset. We further assume that since the judge found there was no "nefarious purpose" behind defendant's actions, she concluded the additional security deposit was not "wrongfully withheld."
We begin our analysis by noting that the SDA limits the amount of security any landlord can require from a tenant to one and one-half times the monthly rent. N.J.S.A. 46:8-21.2. It is undisputed that defendant required plaintiffs to pay two and one-half months' rent as security. Although the lease itself never provided for a separate "pet deposit," the parties understood an increased security deposit amount was attributable to defendant's concession to plaintiffs' desire to keep their two cats. Landlords, however, cannot "[s]ub-divid[e]" a tenant's funds into refundable pet deposits, not subject to the SDA, and other general security deposits that are subject to the SDA. Chatterjee, supra, 380 N.J.Super. at 54, 880 A.2d 496. If the combined amount of all such deposits exceeds the statutory limit of the SDA, permitting such practice "would be an end run and would make a sham of the [SDA] and thwart the legislative intent." Ibid. Although the lease did not contain any express waiver of the SDA's provisions, if it had, such a waiver by plaintiffs would have been void. See N.J.S.A. 46:8-24 ("[a]ny provision of [ ] a[ ] lease ... whereby a person who so deposits ... money waives any provision of [the SDA] is absolutely void"). Thus, we must conclude that defendant violated the SDA. The only question that remains is what is the appropriate remedy for defendant's statutory violation in light of the judge's conclusion that plaintiffs actually caused $3389.99 worth of damages to the premises during their brief leasehold?
The SDA provides a specific remedy for the breach of some of its statutory obligations. For example, pursuant to N.J.S.A. 46:8-19, a landlord must place a tenant's security deposit in an interest bearing account, must notify the tenant where that account is located, and must annually pay over to the tenant, or credit his rent account, with any interest earned on the deposit. If the landlord "fails to invest or deposit the security money in the manner required ... or to provide the notice or pay the interest to the tenant as required," the tenant "may give written notice ... that such security money plus *505 an amount representing interest at the rate of seven percent per annum be applied on account of rent[.]" Ibid.; see also Frontenac Associates v. Fauerbach, 148 N.J.Super. 376, 379, 372 A.2d 683 (Dist.Ct. 1977).
N.J.S.A. 46:8-21.1 requires the landlord to return the tenant's security deposit and interest accrued "[w]ithin 30 days after the termination of the [ ] lease ... less any charges expended in accordance with the terms of [the] lease[.]" Any deductions the landlord makes must be "itemized," and notice must be forwarded to the tenant. Ibid. If the landlord violates this section of the SDA, the tenant may bring suit, and "the court upon finding for the tenant ... shall award recovery of double the amount of said moneys, together with full costs of any action and, in the court's discretion, reasonable attorney's fees." Ibid.
However, even violations of these provisions of the SDA do not accord the "doubling" remedy provided by N.J.S.A. 46:8-21.1 if in fact the tenant has violated his obligations under the lease. For example, in Penbara v. Straczynski, 347 N.J.Super. 155, 157-58, 789 A.2d 134 (App.Div.2002), the landlord sought "a declaration that he was entitled to retain the tenant's security deposit after the tenant vacated the leased premises, and damages [were] allegedly caused to the premises in excess of the amount of the security deposit." He acknowledged that he had not placed the tenant's security in an interest-bearing account, thus violating N.J.S.A. 46:8-19, and that he had failed to comply with N.J.S.A. 46:8-21.1 in that he had not sent the tenant an itemized statement of deductions from the deposit. Penbara, supra, 347 N.J.Super. at 159, 789 A.2d 134.
The trial judge concluded that these statutory violations required the dismissal of the landlord's complaint, and the return of double the tenant's security deposit. Id. at 159-60, 789 A.2d 134. However, in reversing, we noted that any violation of N.J.S.A. 46:8-19 "d[id] not mandate forfeiture of [the] security deposit[.]" Id. at 161, 789 A.2d 134. Instead, "the tenant's remedy, in this context, [wa]s to have the security deposit, and the interest that should have been earned thereon, applied" to his outstanding obligations. Ibid. We further noted that as to any violation of N.J.S.A. 46:8-21.1, the tenant was limited to recovery of double "the net amount `wrongfully withheld,' not double the amount of the initial deposit." Id. at 160, 789 A.2d 134 (quoting Yi, supra, 338 N.J.Super. at 539, 770 A.2d 738 (citing Jaremback v. Butler Ridge Apartments, 166 N.J.Super. 84, 89 n. 1, 398 A.2d 1339 (App.Div.1979))). In short, despite the landlord's admitted statutory violations, the judge was required to "determine the amount of th[e] offsets and, if they [we]re greater than the security deposit withheld, there [wa]s no deposit to return to the tenant and no valid basis for enforcing the notification requirement of the statute." Id. at 160-61, 789 A.2d 134 (citing Jaremback, supra, 166 N.J.Super. at 87-88, 398 A.2d 1339).
We reached a similar result in Lorril Co. v. La Corte, 352 N.J.Super. 433, 800 A.2d 245 (App.Div.2002). There, the landlord sued his tenants for double the rent alleging they had unlawfully held over after the expiration of their lease. Id. at 435, 800 A.2d 245; N.J.S.A. 2A:42-5. The tenants claimed that they were entitled to double the return of their security deposit based upon the landlord's violation of N.J.S.A. 46:8-21.1he failed to provide notice and itemized deductionsand the judge agreed. Id. at 437, 800 A.2d 245.
However, we reversed. We concluded that the tenant was not entitled to double the amount of the security deposit as an *506 offset to monies otherwise due the landlord because of the unlawful holding over. Id. at 441, 800 A.2d 245. "[B]ecause the tenants remaining rent obligation exceeded the security deposit, nothing was unlawfully withheld and nothing remained of the deposit to be doubled." Id. at 442, 800 A.2d 245; see also Truesdell v. Carr, 351 N.J.Super. 317, 321, 798 A.2d 153 (Law Div.2002) (observing that "[i]n posting the security deposit, the tenant is thus on notice that, prior to any return of the money, the deposited sums may be applied to appropriate costs incurred by the landlord as a result of the tenancy").
The SDA, however, fails to provide a specific remedy for violations of its limit upon the amount of security that a landlord may demand. Brownstone Arms v. Asher, 121 N.J.Super. 401, 406, 297 A.2d 219 (Dist.Ct.1972). We have no doubt that had plaintiffs in this case sought to apply the $1425 they deposited in excess of the statutory limit to their rent obligations during their tenancy, such a result would necessarily have been mandated. Although not specifically provided for by the SDA, such a remedy was recognized in Brownstone Arms, supra, 121 N.J.Super. at 406, 297 A.2d 219. Clearly, in those circumstances, if applied to the current rent obligation, the prohibited excess deposit would not be "wrongfully withheld" at the termination of the leasehold, and thus not subject to the doubling provisions of N.J.S.A. 46:8-21.1.[3]
However, we do not believe the same result should occur under the circumstances presented here, i.e., where the landlord has accepted an amount of security that exceeds the statutory limit and does not return it to the tenant at the termination of the lease. Under these circumstances, to the extent it exceeds the permissible statutory limit, plaintiffs' security deposit has been "wrongfully withheld" by defendant and the remedy provided by N.J.S.A. 46:8-21.2 is appropriate. Thus, prior to considering any credits due defendant for damage to the leasehold caused by plaintiffs, the judge was required to give them the benefit of the statutory remedy.[4] We reach this conclusion for a variety of reasons.
We recently noted that the SDA "`recognizes that the security deposit remains the tenant's money, although it is designed to provide some protection from loss to the landlord.'" Hale v. Farrakhan, 390 N.J.Super. 335, 342, 915 A.2d 581 (App.Div.2007) (quoting MD Assocs. v. Alvarado, 302 N.J.Super. 583, 586, 695 A.2d 760 (App.Div.1997)). The legislature has clearly spoken as to the amount of protection afforded the landlordno more than one and one-half months' rent. N.J.S.A. 46:8-21.2. N.J.S.A. 46:8-21.1 was specifically "intended to protect tenants from overreaching landlords who seek to defraud tenants by diverting rent security deposits to their own use." Jaremback, supra, 166 N.J.Super. at 87, 398 A.2d 1339 (citing Watson v. Jaffe, 121 N.J.Super. 213, 214, 296 A.2d 537 (App.Div.1972)). "The statute establishes the landlord's obligations in unmistakable and definite terms, and clearly provides a mandatory remedy *507 for default." Yi, supra, 338 N.J.Super. at 538, 770 A.2d 738.
If we were to permit a landlord to do what the trial judge permitted this landlord to do, we would in essence be turning a blind eye to the obvious statutory violation. The judge believed that by according plaintiffs an offset credit for the total amount of their security deposit, they were obtaining the "full benefit" of that deposit. This was undoubtedly true, however, this reasoning ignored the fact that defendant was not entitled to demand that amount of security from plaintiffs in the first instance. As a result, defendant, who violated the statute, suffered no consequence. As we noted in a different context in Yi, "[m]uch mischief would ensue if landlords or courts were permitted to manipulate the express provisions of the statute." 338 N.J.Super. at 538, 770 A.2d 738. Similar concerns arise here.
In addition, we find a qualitative difference between a landlord's violation of N.J.S.A. 46:8-21.2, and the more technical violations of N.J.S.A. 46:8-19 and N.J.S.A. 46:8-21.1 discussed in the cases we have cited above. In those situations, the landlord rightfully acquired the full amount of the security on deposit. The only issue presented was whether a violation of those portions of the SDA resulted in monies "wrongfully withheld" at the termination of the leasehold. We therefore acknowledged in those cases that damages suffered by the landlord as a result of violations of the tenant's obligations to perform in accordance with the lease were properly deducted from the security deposit before determining whether any amount was "wrongfully withheld."
Here, however, defendant was never entitled to hold plaintiffs' extra month of security. The Legislature has strictly prohibited him from doing so. Having never had a rightful claim to the money, we are hard-pressed to see how defendant should nevertheless obtain the full benefit of it without any penalty.
Lastly, to the extent the trial judge found that defendant had no "nefarious" purpose in retaining a prohibited amount of security, and utilized that in reaching her decision, we note that such considerations are irrelevant if a violation of N.J.S.A. 46:8-21.1 is proven. "A court may not withhold the statutorily mandated doubling of a wrongfully retained security deposit based on its view that the landlord's violation of N.J.S.A. 46:8-21.1 was de minimus or other equitable considerations." Hale, supra, 390 N.J.Super. at 343, 915 A.2d 581. Thus, we conclude that to the extent plaintiffs' security deposit exceeded the SDA's permitted limit, that amount was wrongfully withheld when the leasehold terminated, and plaintiffs were entitled to the statutory remedy of double the amount, $2850, and, in the judge's discretion, attorney's fees.
Having said that, however, we can discern no principled reason why, in light of the extensive testimony and well-supported factual findings made by the judge, the result we have reached should now require further proceedings. Defendant should be entitled to obtain the benefit of what he has already proven. In other words, even though defendant never filed a claim for the full amount of damages he alleged, we believe it is both impractical, since factual determinations have already been made, and unwise, from the standpoint of judicial economy, to force him to do so now.
In MD Assocs., the situation was the converse of that presented in this case. There, the landlord was the plaintiff seeking compensation for damages that exceeded the security deposit on account, and rent due based upon the tenant's alleged *508 improper termination of the lease. MD Assocs., 302 N.J.Super. at 585, 695 A.2d 760. The tenant/defendant did not file any counterclaim, but instead alleged that he had properly terminated the tenancy, at the landlord's insistence, and that some of the charges for alleged damage were improper. Ibid. The trial judge believed the tenant, made an award in his favor, and doubled it under N.J.S.A. 46:8-21.1, despite the tenant's failure to have filed any affirmative request for the relief. Ibid. In affirming that decision, "we recognize[d] the inherent and express authority of a judge hearing a case in the Small Claims section to recognize defenses to the claim asserted in the complaint and in appropriate cases to fashion a counterclaim." MD Assocs., supra, 302 N.J.Super. at 587, 695 A.2d 760; accord Fanarjian v. Moskowitz, 237 N.J.Super. 395, 399-400, 568 A.2d 94 (App.Div.1989). We conclude that in this case, similar reasoning permits the following result.
That portion of plaintiffs' security deposit that exceeded the limit of the SDA, $1425, and was thus wrongfully withheld, should be doubled pursuant to N.J.S.A. 46:8-21.1. All of the security deposit otherwise properly held by defendant, $2125.41, was exhausted by defendant's proven claim for $3389.99 in damages and expenses, leaving a balance of $1237.58 due to defendant. Subtracting this amount from the $2850, plaintiffs are entitled to judgment in their favor in the amount of $1612.42.
We remand the matter to the trial court for entry of an amended judgment in favor of plaintiffs in that amount. We further direct the trial judge, in the exercise of her discretion, to consider whether attorney's fees should be awarded to plaintiffs.
Affirmed in part; reversed in part; remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.
NOTES
[1] The complaint erroneously listed the amount of the deposit as $3625.
[2] The SDA permits a prevailing tenant to recover "double the amount of [the deposit] together with full costs of any action and, in the court's discretion, reasonable attorney's fees." N.J.S.A. 46:8-21.1. It also grants jurisdiction over any actions "for the return of all or a part of a security deposit in which the amount in dispute, including any applicable penalties, does not exceed the sum of $5,000, exclusive of costs[,]" to the Small Claims Division. N.J.S.A. 46:8-21.4. Plaintiffs' potential recovery, $3562.50 doubled, or $7135, exceeded the jurisdictional limit.
[3] Because the issue is not presented, we need not decide whether some other penalty ought to be imposed upon the landlord for this violation of the statute under those circumstances. For example, the landlord might also be obligated to credit the tenant with some amount of interest earned on the illegal excess deposit similar to that required for a violation of N.J.S.A. 46:8-19.
[4] To the extent a contrary result occurred in Alston v. Thomas, 161 N.J.Super. 403, 404 n. 1, 391 A.2d 978 (Dist.Ct.1978), we specifically disapprove that holding.