**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3149-18T1

ROBERT MINSTER and
MARIANTONIA COSTAMARAL,

     Plaintiffs-Respondents,

v.

MICHAEL VOLOVNIK and
PEOPLEMOVER, LLC,

     Defendants-Appellants.

_____

Submitted January 16, 2020 – Decided May 21, 2020

Before Judges Nugent and Suter.

On appeal from Superior Court of New Jersey, Law Division, Mercer County, Docket No. DC-3803-18.

Lori C. Greenberg & Associates, attorneys for appellants (Lori Cohen Greenberg and Mary T. Madden, on the brief).

Szaferman, Lakind, Blumstein & Blader, P.C., attorneys for respondents (Brandon C. Simmons, on the brief).

PER CURIAM

Following the expiration of the lease of a single-family house in Princeton, plaintiffs Robert Minster and Mariantonia Costamaral, former tenants, sued defendant Michael Volovnik ("defendant"), former landlord, and Peoplemover, LLC for the return of their security deposit and for maintenance expenses they claimed defendant should have paid.[1] Defendant counterclaimed for damages to the leased property and the cost of removing an electric "fence" plaintiffs had installed to restrain their dog. The parties' bench trial culminated in the court entering an $8206.68 judgment for plaintiffs.

Defendants appeal. They argue the trial court erred in its decision concerning damages. Because the trial court's decision concerning certain elements of the parties' damage claims is unsupported by sufficient credible evidence or applicable law, and because the judgement must be modified, we

---

[1] Defendant Volovnik is the named landlord in the lease between him and plaintiff Minster and in the amendment to the lease that added plaintiff Costamaral as a tenant. Defendant Peoplemover, LLC is not identified as the landlord in any pleading. The complaint alleges, without any supporting facts as required by Rule 4:5-2, that Volovnik was acting as the agent of Peoplemover. The trial record is bereft of evidence of any such agency relationship, and we cannot discern from the record why judgment was entered against Peoplemover. For these reasons, we refer to Volovnik as "defendant" in this opinion, and to Volovnik and Peoplemover, collectively, as defendants. For ease of reference, and because only Minster testified for plaintiffs at trial, we refer to him as "plaintiff" and to Minster and Costamaral collectively as "plaintiffs."

affirm in part, reverse in part, and remand for computation of a revised judgment.

Plaintiff moved into the leased property in 2011 and paid $2600 monthly rent. The parties do not dispute plaintiff paid defendant $3900 as a security deposit and $2600 as "damage protection—pet security." Plaintiff signed a superseding lease in February 2013, and signed an amendment in 2017 to include Mariantonia Costamaral as a tenant. The term of the superseding 2013 lease was February 1, 2013 through January 31, 2018. Rent, which increased over the lease term, was $3050 for the final year.

Plaintiffs left the house when the lease expired and told defendant he could use the security deposit for the final month's rent. Defendant declined to do so, claiming, among other things, the costs to remove items plaintiffs should have removed but did not, and costs to repair damages in excess of normal wear and tear, exceeded the security deposit. When discussions broke down, this action ensued.[2] Plaintiffs sought damages under the Security Deposit Act ("Act"), N.J.S.A. 46:8-19 to -26, and damages for reimbursement of costs they claimed were defendant's responsibility. Defendant counterclaimed for

_____

[2] A prior Pennsylvania action concerning the same issues, filed by defendant, had been dismissed without prejudice on jurisdictional grounds.

damages in excess of normal wear and tear.  The ensuing bench trial resulted in the judgment in favor of plaintiffs, from which defendants have appealed.

During their bench trial, the parties disputed whether certain costs were for maintenance and thus plaintiffs' responsibility or for "vital systems" and thus defendant's responsibility.  The relevant lease clause stated, "[t]enant shall have the responsibility to maintain the Premises in good repair at all times.  The Landlord shall make any necessary repairs or replacements only to the vital systems, serving the premises."  This lease provision specified, "[t]enant agrees to maintain, repair and clean the property; including exterior area in as good condition as it was found at the starting time of this Lease."

During the bench trial, plaintiff and defendant testified and introduced documentary evidence.  No other witnesses testified.  Plaintiffs sought reimbursement for two improvements they made to the property's structural components and three expenditures the court deemed to be maintenance.  The expenditures for improvements were $400 to sealcoat the driveway and $732.95 to have the roof gutters repaired.  The items deemed maintenance were expenditures by plaintiff for yard cleanup and mulching when he first moved in, costs for pest control after mice entered the home's attic, and a fee to have the chimney inspected.  Because plaintiffs do not challenge the court's

determinations these were maintenance items and thus plaintiffs' responsibility, and because the court's determinations are amply supported by the evidence on the record, they require no further discussion.

The parties disputed the need to sealcoat the driveway. Plaintiff testified sealcoating is "something you have to do to an asphalt surface periodically so it doesn't chip away." Asked by his attorney if he was having problems with the driveway, plaintiff replied, "[w]ell, I was concerned that it was going to start to chip away." Plaintiff acknowledged the driveway "was in relatively good condition" but said "[i]t looked like . . . very small parts of the driveway may start to chip away and deteriorate[.]" Asked if he told defendant about the problem with the driveway, plaintiff replied: "I can't recall, I spoke to [defendant] probably once every two months when he would come pick up the rent check. I would usually try to be pretty transparent with him, so I very well could have."

Defendant testified plaintiffs never discussed sealcoating the driveway. Defendant explained that plaintiffs likely worked on the property because they once intended to purchase it. According to defendant, the driveway was only four or five months old when defendant moved in, was in good condition, and needed no repairs.

A-3149-18T1

Plaintiffs paid $732.95 to have the roof gutters repaired. Plaintiff testified there were holes in the gutter sections above the front and back steps to the house. In winter, water would drip on the steps and freeze, creating a dangerous condition. Plaintiff claimed he spoke to defendant, who suggested he paint the gutters. Defendant allegedly said that when the paint dried, it would stop the water from leaking. To assure their own safety, plaintiffs paid to have the gutters repaired.

Defendant sought damages primarily for three items: removal of tree stumps, removal of the electric dog fence, and cleanup of leaves on the roof and in the gutters that plaintiffs should have removed before they vacated the house. Defendant paid $8360.75 to have trees and stumps removed. According to defendant, plaintiffs had a shade tree next to the side of the house removed, except for approximately five feet of the tree's trunk. Other trees or stumps were removed because plaintiff had cut the tops and branches off the trees and the trees had died. Defendant testified he never told plaintiff he could remove the trees, and plaintiff never told him any of the trees were dead or decayed. Defendant claimed the trees were perfectly healthy. Plaintiff simply did not want shade near the house and did not want sun to block the back yard.

A-3149-18T1

Defendant also testified that because the lease required plaintiffs to leave the home in the condition it was in when the lease began, they should have paid for the removal of the electric dog fence. Defendant had an electrician remove it. However, because the person who installed the electric fence did so in violation of the electrical code, defendant had to pay the electrician to repair the work. Defendant said part of the repair was installing "GFI outlets" in the garage where the electric fence was activated. The cost for removing the electric fence and installing the GFI outlets was $3893.

Defendant also sought reimbursement for money he spent for removal of leaves from the roof and gutters. The cost of the cleanup was $749.

Plaintiff testified in rebuttal and denied defendants' testimony concerning the trees and the electric fence. Plaintiff claimed the tree next to the side of the house was rotting. When defendant refused to remove it, plaintiff asked if he could remove it provided he paid for the removal. Defendant agreed, so plaintiff had it removed. Plaintiff acknowledged the contractor left approximately five feet of the tree trunk or stump. He also testified he removed parts of the trees in a wooded area on the property behind the house, but only parts that were dead. Concerning the electric fence, plaintiff testified defendant said it was okay to leave it because it would add to the property's value.

7

The trial court delivered an oral opinion following the close of the parties' proofs and arguments and supplemented its opinion in a written decision the following day.  In its oral decision, the court found plaintiff testified credibly for the most part, but defendant not so much.

Concerning plaintiffs' claims for reimbursement, the court determined the driveway was a "vital system" and therefore defendants' responsibility.  The court did not discuss the testimony that plaintiffs once considered purchasing the home, nor the testimony plaintiffs had the work performed without first discussing it with defendant or giving him the opportunity to have it done.  The court also determined the repair of holes in the gutter were repairs to a vital system, and defendant refused to make them.

Concerning defendants' claims, the court determined that because the tree on the side of the house provided shade and helped cool the house, and "getting cool is, kind of, a vital system," the tree was a vital system and therefore defendant's responsibility.  The court determined plaintiff should have cleaned the gutters before he left, and thus defendant was entitled to that expense. However, as to the removal of the electric fence, the court could not determine in the absence of testimony from the electrician who removed it whether the $3800 invoice was solely for removal of the fence or, to a large extent, necessary

8

to repair other electrical code violations unrelated to the fence. Accordingly, the court determined that between the electric fence and gutters, "$749 is a fair adjustment between the two."

Summarizing its findings, the court determined the landlord was entitled to $3050 rent plus $749 for cleaning gutters that plaintiffs should have cleaned, for a total of $3799. Plaintiffs were entitled to return of their security deposits totaling $6500, plus the $400 for sealcoating the driveway and $732.95 for repairing the gutters, for a total of "$7741.49."[3] Deducting the $3799 plaintiffs owed from the total of $7741.49, the court computed the difference to be $3942.49. The court doubled that sum "[u]nder the Rent Security Deposit Act," awarded plaintiff $7884.98, and allowed plaintiffs time to submit an application for attorney's fees.

In its written amplification, the court determined "plaintiff's perception that the tree by the house was dying, dropping many limbs and branches, and that some of the large limbs were a danger to people in the house," was credible. The court further determined the tree posed a danger to the house and its occupants. The court specifically accepted "the testimony that the landlord's response was that this was an insurable event and consciously chose to allow the

---

[3] We note the trial court's computational error.

unreasonably dangerous condition to exist." The court commented that plaintiff was able to have much of the tree removed for a small amount of money, "and [since] the landlord proposed that the remainder cost of $8316.75 to remove, the landlord had the benefit of plaintiff's willingness to advance the money and plaintiff's ability to obtain a better price." Although the court noted "the cost of removing a large tree might be as much as defendant's exhibit shows," the court concluded it could not determine whether the proposed cost was reasonable without supporting testimony from the tree removal company.

The court reiterated its finding concerning the removal of the electric fence and the computation of the net amount it doubled and included in the judgment. The total judgment, including costs and an attorney fee of $172.70, totaled $8206.68.

On appeal, defendants contend the trial court erred by denying their claims for the costs of removing trees plaintiff cut down and the electric fence. Defendants also argue the trial court erred by awarding plaintiffs their claim for sealcoating the driveway. Last, defendants argue the court erred by awarding plaintiffs the return of their security deposit plus double damages.

10

Plaintiffs respond that the trial court's findings are supported by credible evidence, its computation of damages is consistent with the case law, and therefore the court's judgment should be affirmed.

Our consideration of "[f]inal determinations made by the trial court sitting in a non-jury case [is] subject to a limited and well-established scope of review[.]" Seidman v. Clifton Sav. Bank, 205 N.J. 150, 169 (2011). "[W]e do not disturb the factual findings and legal conclusions of the trial judge unless we are convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." In re Forfeiture of Pers. Weapons & Firearms Identification Card Belonging to F.M., 225 N.J. 487, 506 (2016) (quoting Rova Farms Resort, Inc. v. Inv'rs Ins. Co. of Am., 65 N.J. 474, 484 (1974)). The court's findings of fact are "binding on appeal when supported by adequate, substantial, credible evidence." Cesare v. Cesare, 154 N.J. 394, 411-12 (1998) (citation omitted). In contrast, a trial judge's "interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995) (citation omitted).

Here, two of the trial court's determinations—that plaintiffs were entitled to $400 for sealcoating the driveway, and the shade tree on the side of the house was a "vital system"—are unsupported by either the record or by legal precedent.

We do not disagree with the trial court's finding that the driveway was a vital system. That, however, does not end the inquiry. Determining a system was "vital" did not entitle plaintiffs to arbitrarily make improvements to those systems without first notifying defendant. Nothing in plaintiff's testimony suggested the driveway was in need of immediate repair. Rather, according to plaintiff, asphalt surfaces had to be periodically sealcoated to prevent deterioration and "chipping." More important, nothing in the record suggests that plaintiff had the expertise to determine how often a driveway must be sealcoated to be properly maintained or what signs of wear and tear indicate the need for immediate sealcoating, matters generally beyond the ken of an average person. See DeHanes v. Rothman, 158 N.J. 90, 100 (1999). And nothing in the lease authorized plaintiffs to undertake improvements to vital systems without first notifying defendant of the need to do so and providing him the opportunity to make necessary repairs.

Plaintiff could not recall discussing with defendant the need to sealcoat the driveway. Defendant was adamant that plaintiff never discussed the issue

12

with him. Because the record is devoid of any competent evidence the driveway needed sealcoating at the time plaintiff had it done, and because plaintiff never afforded defendant the opportunity to inspect the driveway or undertake the sealcoating, we hold as a matter of law that plaintiffs failed to sustain their burden of proving this element of their damages. See Mercedes-Benz Credit Corp. v. Lotito, 328 N.J. Super. 491, 510 (App. Div. 2000) ("generally the party seeking damages has the burden of proof") (citing Caldwell v. Haynes, 136 N.J. 422, 436 (1994)).

We also determine as a matter of law that the shade tree was not a vital system. The lease refers to "vital systems, serving the premises." Concluding a single tree is a vital system, given the context of phrase's use in the lease, requires a tortured interpretation of the phrase. Moreover, neither party testified to reasonably expecting the lease to be construed in such a manner. See Cty. of Morris v. Fauver, 153 N.J. 80, 103 (1998) (noting courts may consider "the parties' practical construction of the contract as evidence of their intention and as controlling weight in determining a contract's interpretation").

Plaintiff did not testify that he considered the tree a vital system, nor did defendant. Rather, plaintiff testified he obtained permission to remove the tree on the condition that he pay for it. Assuming the trial court accepted plaintiff's

testimony on that point as credible, the court should have determined whether the parties' contemplated removal of the entire tree.

In addition, in its supplemental opinion, the court apparently confused defendant's testimony about the cost of removing trees and other clearing activities with the removal of the shade tree's trunk. The court appeared to confuse the invoice for all the work as being solely for the shade tree on the side of the house. The invoice's content and defendant's testimony established the invoice was for removing the remainder of the tree on the side of the house as well as trees in the wooded area that had died.

Nonetheless, "appeals are taken from orders and judgments and not from opinions, oral decisions, informal written decisions, or reasons given for the ultimate conclusion." Do-Wop Corp. v. City of Rahway, 168 N.J. 191, 199 (2001). We conclude, as a matter of law, defendant failed to prove that plaintiff's removal of treetops and tree limbs from the trees in the wooded area behind the home caused them to die.

Even if defendant had provided a competent lay opinion that the trees were dead, what caused them to die required an expert opinion. Plaintiff testified that he only trimmed dead wood from the trees. Defendant offered no competent proof that plaintiff's activity caused the trees to die or accelerated their

14

deterioration process. Indeed, defendant did not pinpoint when plaintiff trimmed the trees, what condition they were in before plaintiff trimmed them, what condition they were in after plaintiff trimmed them, or how soon after plaintiff trimmed them they stopped growing or blooming. These are all considerations well beyond the ken of a lay person. Absent expert testimony, defendant failed to carry his burden of proof on this element of damages.

The $8316.75 invoice for removing four big trunks in the back yard, one stump in the center of the yard, a maple tree from the front yard, and other work does not itemize or allocate the costs. The trial court had no basis for determining the amount allocated to the removal of the section of the tree trunk beside the house, even had it been inclined to do so. Consequently, we need not remand this matter for further consideration of defendant's damage claim concerning the shade tree beside the house because we conclude as a matter of law that he failed to sustain his burden of proving damages for this claim.

For similar reasons, we find no error in the trial court's rejection of defendants' claim to remove the electric fence. It was difficult if not impossible to determine from defendant's hearsay testimony whether the electrical work performed by the electrician was attributable solely to cost of removing the fence or in part to electrical violations having nothing to do with the electrical

15

fence.   The trial court did not err by rejecting defendant's testimony as untrustworthy hearsay.

Last, we conclude the judge erred in computing damages stemming from defendant's failure to timely return their security deposit.  A landlord must, within thirty days after the termination of a lease agreement, "return by personal delivery, registered or certified mail the sum so deposited plus the tenant's portion of the interest or earnings accumulated thereon, less any charges expended in accordance with the terms of a contract, lease, or agreement, to the tenant." N.J.S.A. 46:8-21.1.  "[T]he statutory penalty imposed for failure to return a tenant's security deposit within the prescribed thirty-day period is double the <u>net</u> amount 'wrongfully withheld,' not double the amount of the initial deposit." <u>Penbara v. Straczynski</u>, 347 N.J. Super. 155, 160 (App. Div. 2002) (quoting <u>Kang In Yi v. Re/Max Fortune Props., Inc.</u>, 338 N.J. Super. 534, 539 (App. Div. 2001)).  Thus, the only item to be doubled is the "net amount due to the tenant on the security deposit and interest, after deduction of the charges due to the landlord." <u>Jaremback v. Butler Ridge Apartments</u>, 166 N.J. Super. 84, 89 n.1 (App. Div. 1979).

Although only the net amount is doubled when a security deposit is lawful, an exception exists for unlawful security deposits, that is, for security deposits

that exceed the statutory limit of one and one-half times monthly rent. The excess must be doubled before any credits due the landlord are applied.

The Act limits a security deposit a landlord can require to one and one-half times the monthly rent. N.J.S.A. 46:8-21.2. A landlord cannot circumvent the statutory limitation by characterizing part of the security deposit as pet security. Reilly v. Weiss, 406 N.J. Super. 71, 78-79 (App. Div. 2009). If a security deposit exceeds the statutory limitation, the excess is deemed wrongfully withheld upon expiration of the lease, and must be doubled before considering any credits to a landlord. Id. at 82, 85.

Here, plaintiff's 2011 rent was $2600. The combined security deposit and pet deposit totaled $6500, exceeding the statutory limitation of one and one-half times the monthly rent—$3900—by $2600, the pet security. The $2600 should have been doubled before the court applied any credits.

In summary, plaintiffs sustained their burden of proof as to defendant's responsibility for the $732.95 they expended on the gutters. Defendant is entitled to the last month's rent of $3050 plus $749 for removing leaves from the roof and gutters, for a total credit of $3799. Deducting the $732.95 due plaintiffs, defendant is entitled to a credit of $3066.05 against the $3900 security deposit permitted by the Act. The difference is $833.95, which doubled, equals

$1667.90. That amount added to the $5200—the doubled $2600 unlawful excess security deposit—results in $6867.90 owed plaintiffs by defendant. We thus vacate the existing judgment and remand this matter to the trial court to enter a modified judgment for $6867.90 plus the fees and costs previously included in the judgment.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3149-18T1