Hudson County District Court.

ATTILIO RICCI, PLAINTIFF, v. HARRY CLAIRE AND IDA CLAIRE, DEFENDANTS.

Decided August 23, 1943.

For the plaintiff, *James P. McMahon.*

For the defendants, *Harber & Freesman.*

For the Administrator of the Office of Price Administration, *William E. Sandmeyer.*

Cozzi, D. C. J. The plaintiff, Attilio Ricci, and the defendants, Harry Claire and Ida Claire, his wife, entered into a written lease wherein plaintiff rented to the defendants for a term of one year commencing September 1st, 1941, a certain apartment for dwelling purposes, in the City of Union City, New Jersey. The clause in said lease provided that the said premises were demised "for use as a private dwelling for himself and his family." It's undisputed that Mrs. Claire's sister, her husband, and two children, resided in said apartment without the consent of the plaintiff. The plaintiff informed the defendants that a violation existed and insisted that the relatives move. This the defendants did.

On July 1st, 1942, the Maximum Rent Regulation No. 28 promulgated pursuant to the Emergency Price Control Act of 1942, enacted by the Congress of the United States on January 30th, 1942, became effective in the Northeastern New Jersey Defense-Rental Area, of which the County of Hudson and State of New Jersey is a part, within which area this particular leased apartment is located.

It appears that in July, 1942, the plaintiff instituted dispossess proceedings in this court, against the defendants, predicated upon the violation of the defendants in permitting their relatives to live with them, contrary to the terms of the lease. It is conceded that no notice of this action was filed with the Northeastern New Jersey Defense-Rental Area Office, as prescribed by the rules and regulations concerning eviction of tenants by the landlord. It appears that thereafter the plaintiff and the defendants agreed that the dispossess proceedings be abandoned and that the defendants

would vacate the premises on the expiration of the lease on August 31st, 1942, as was evidenced by a written notice to that effect, signed by the defendants and addressed to the plaintiff. The defendants failed to remove on August 31st, 1942, stating that they could not find a suitable apartment. The defendants, however, did move, in September, 1942, and offered to the plaintiff the rent for that month, which tender of rent was refused by the plaintiff.

Thereafter, the plaintiff instituted the present suit for double the rent pursuant to the provisions of Revised Statutes of 1937, of the State of New Jersey, 2:58–5; *N. J. S. A.* 2:58–5, as a penalty, which is in excess of the maximum legal rent as controlled by the Office of Price Administration pursuant to the laws of the United States.

The Administrator of the Office of Price Administration for this area, intervened, and permission was granted for such intervention. Accordingly, the Administrator filed a brief to which the defendants joined and adopted as their own in lieu of a separate brief.

The importance of this case is significant because of the state of war in which the United States is concerned at the present time, and the apparent conflict of laws that now exists with the effective administration of the Emergency Price Control Act of 1942, 50 *U. S. C. A. Appendix,* §§ 901 *et seq.,* which, in this case, particularly involves the question of rents.

The significant question, therefore, is whether or not the Maximum Rent Regulation No. 28 promulgated pursuant to the Emergency Price Control Act of 1942, and raising rents as of March, 1942, has, in effect, superseded the State Law Revised Statutes 2:58–5, upon which statute this suit is now predicated and the plaintiff relies.

A careful perusal and study of the pertinent statutes, provisions of the United States Constitution, rules and regulations promulgated by the Office of Price Administration and the state statute are necessary, and are therefore quoted at length.

New Jersey Revised Statutes of 1937, 2:58–5; *N. J. S. A.* 2:58–5, provides:

"If a tenant of real estate shall give notice of his intention to quit the premises by him held at a time specified in such notice and shall not deliver up the possession of such real estate at the time specified in the notice, such tenant, his executors or administrators, shall, from such time, pay to his landlord or lessor, his heirs or assigns, double the rent which he should otherwise have paid, to be levied, sued for and recovered at the same time and in the same manner as the single rent before the giving of such notice could be levied, sued for and recovered; and such double rent shall continue to be paid during all the time such tenant shall continue in possession after the giving of such notice."

Section 205 (d) of the Emergency Price Control Act, 56 *Stat.* 23 (1942); 50 *U. S. C. A. Appendix*, §§ 901 *et seq.*, provides:

"No person shall be held liable for damages or penalties in any Federal, State, or Territorial Court, on any grounds for or in respect of anything done or omitted to be done in good faith pursuant to any provision of this Act or any regulation, order, price schedule, requirement, or agreement thereunder, or under any price schedule of the Administrator of the Office of Price Administration or of the Administrator of the Office of Price Administration and Civilian Supply, notwithstanding that subsequently such provision, regulation, order, price schedule, requirement, or agreement may be modified, rescinded, or determined to be invalid."

*Provisions of Maximum Rent Regulation No. 28 Involved.*

Section 1 (d) provides:

"An Agreement by the tenant to waive the benefit of any provision of this Maximum Rent Regulation is void. A tenant shall not be entitled by reason of this Maximum Rent Regulation to refuse to pay or to recover any portion of any rents due or paid for use or occupancy prior to the effective date of this Maximum Rent Regulation."

Section 6 (a) provides:

"So long as the tenant continues to pay the rent to which the landlord is entitled, no tenant shall be removed from

any housing accommodations, by action to evict or to recover possession, by exclusion from possession, or otherwise, nor shall any person attempt such removal or exclusion from possession, notwithstanding that such tenant has no lease or that his lease or other rental agreement has expired or otherwise terminated, unless:

"(3) The tenant (i) has violated a substantial obligation of his tenancy, other than an obligation to pay rent, and has continued, or failed to cure, such violation after written notice by the landlord that the violation cease, or (ii) is committing or permitting a nuisance or is using or permitting a use of the housing accommodations for an immoral or illegal purpose."

Section 6 (d) provides:

"At the time of commencing any action to remove or evict a tenant (except an action based on non-payment of a rent not in excess of the maximum rent) the landlord shall give written notice thereof to the Area Rent Office stating the title, the number if possible, the court in which it is filed, the name and address of the tenant and the grounds on which eviction is sought."

*Article of the Constitution of the United States Involved.*

Article 6, cl. 2, provides:

"This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, anything in the Constitution or Laws of any State to the contrary notwithstanding."

The Emergency Price Control Act, *supra,* and the rules and regulations promulgated in the furtherance of that act to be administered by the Office of Price Administration, is twofold in scope. First, it was intended to control the eviction of tenants in congested areas, such as defense areas where sudden migration and overflow of defense workers in defense areas would create a sudden demand for living quarters, and

second, to freeze the rents so as to prevent inflation and thus seek to preserve the economic security of a nation during and after the war.

A long line of cases, needless to cite at this time, have established an undeniable right of Congress to enact such legislation as herein quoted, in time of war, to preserve the economic security of our nation as well as to provide for the common defense of our people. Hence it follows, *a fortiori*, whenever a conflict exists between the state and federal laws pertaining to such legislation, the federal law must take precedence to be enforced to the exclusion of the state law, so far as it is consistent with constitutional sanction. Illustrative of this situation is the recent case of *Helena Rubenstein, Inc.*, v. *Charlene's Cut Rate*, 132 *N. J. Eq.* 254; 28 *Atl. Rep.* (*2d*) 113. The United States Supreme Court, in the case of *United States* v. *MacIntosh*, 283 *U. S.* 605; 51 *S. Ct.* 570, reiterated at some length, the extent of the broad powers of Congress incidental to its power to declare war.

Congress has spoken, rules and regulations have been promulgated concerning the eviction and the freezing of rents, the enforcement of which obviously conflicts with the enforcement of the state statute upon the basis of which the plaintiff herein seeks to recover double rent against the defendant. It is contended by the plaintiff that the prohibition concerning the freezing of rents does not affect the state statute as embraced in *R. S.* 2:58–5; *N. J. S. A.* 2:58–5, as the latter, in essence, really creates a penalty as distinguished from rents. To this, it is sufficient to say, that in the time of war, when our national security is paramount, that the courts will construe the acts of Congress and the rules and regulations promulgated in pursuance thereto, to lend enforcement, not only to its expressions, but with equal force, to their implications. In this respect, the court will not permit a landlord to receive pursuant to a state statute what the laws of Congress expressly or impliedly intended to prohibit. Clearly, they were intended to prevent any exaction from the tenant above the rent as frozen or approved by the Price Administration, even though exaction may be classified as a penalty. To hold to the contrary would create a serious evasion of the

enforcement of these laws, rules and regulations and prove of great detriment to our national welfare and security.

Furthermore, the plaintiff could not have succeeded in the dispossess proceedings instituted against defendant tenant, in view of the O. P. A. regulations pertaining to evictions, above quoted. The written notice by the tenant to vacate, served upon the plaintiff, under these circumstances, was involuntarily given and it cannot be construed nor effectively constitute itself a waiver of the O. P. A. regulations by the tenant. See *Maximum Rent Regulation No.* 28, § 1 (*d*) quoted *supra*.

For the reasons stated, the State Law Revised Statutes 2:58–5; *N. J. S. A.* 2:58–5, for the emergency time being, has been superseded by the federal regulations and laws above quoted, and the plaintiff's suit for double rent, in view of a timely tender of one month's rent by the defendant tenant, must fail.

Judgment will be entered for the defendants.