800 A.2d 245 (2002)
352 N.J. Super. 433
LORRIL COMPANY and Newark Jersey, Plaintiffs-Appellants,
v.
Dean LA CORTE and Danielle La Corte, Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued June 5, 2002.
Decided June 28, 2002.
*246 John G. Colannino, Monmouth Beach, argued the cause, for appellants.
Respondents, Dean and Danielle La Corte argued the cause pro se (Jay G. Helt, Holmdel, on the brief).
Before Judges A.A. RODRÍGUEZ, LEFELT, LISA.
The opinion of the court was delivered by LEFELT, J.A.D.
Defendants Dean and Danielle La Corte were tenants of plaintiff landlord, Lorril Company. Their written lease permitted either party to terminate the tenancy upon "two months written notice." Defendants provided such notice, but did not vacate the premises until forty-five days after the termination date mentioned in the notice. On the last date of defendants' occupancy of the premises, Lorril re-entered the apartment without a court order or defendants' permission and began to remove various appliances from the premises. Lorril sued to recover its rent, including double rent for the holdover period pursuant to N.J.S.A. 2A:42-5. Defendants counter-claimed for unlawful entry and return of their security deposit.
The trial judge awarded judgment in favor of Lorril after he doubled the rent defendants owed the landlord for the holdover period; doubled the tenants' security deposit, before considering whether the tenants' rent charges exceeded the deposit; and found that Lorril had unlawfully entered the apartment. The landlord appealed and argued two points: (1) defendants were not entitled to doubling of the security deposit because they owed rent in excess of the deposit; and (2) Lorril did not unlawfully enter the premises and thus *247 defendants owed rent for the period after the alleged unlawful entry. We agree with Lorril's first point but because of our construction of the holdover statute, N.J.S.A. 2A:42-5, we need not deal with Lorril's second point, and we reverse and remand for entry of judgment in favor of Lorril in excess of the amount awarded by the trial judge.

I.
We briefly set forth the relevant facts and pertinent procedural history. Under the lease, defendants were obligated to pay $945 monthly rent. The lease also required sixty-days written notice of an "intention to terminate/moveout." On February 23, 2000, defendants informed Lorril by letter that they would terminate on or before April 30, 2000. Less than one month after sending this first notice, defendants sent a second letter advising that they now intended to move on June 1, 2000, when defendants believed that the house they were building would be ready for occupancy.
On or about May 30, 2000, however, defendants informed the superintendent that their new home was not ready, they would be unable to move by May 31, and could not provide a firm date for their move. Defendants finally vacated on July 15, 2000. Defendants did not pay any rent for June or July, and Lorril claims it did not begin receiving rent for the apartment from a new tenant until August 15th, though this date was disputed by defendants.
Lorril contended, however, that the only accurate "moveout" notice it received was on July 15, when defendants actually left the premises. Therefore, according to Lorril, because rent was due on the first of the month and sixty-days "moveout" notice was required under the lease, the defendants owed rent for June, July, August and September. Further, Lorril argued that defendants held over after the date provided in their original "moveout" notice. Consequently, under N.J.S.A. 2A:42-5, Lorril was entitled to double rent for June and July.
The trial judge found that the tenants "did give notice, saying that they would be moving out as of May 31st because they were having a new house built." The judge further noted that "a statute ... provides, if a tenant does give a notice to move out and then does not comply with it, they are liable [for] double the rent." The judge found that "the tenant did move out on July 15th," and awarded double rent for June and July.
The judge also found "that there was a wrongful entry on July 14th .... [when the landlord purported] to exercise dominion over the premises in moving refrigerators and things of that nature." The judge declined to award damages for the wrongful entry, but did conclude that "at that point, [the landlord cannot] claim rent for any rents that accrued after that particular date, i.e. August 1st and September 1st."
The judge also found that Lorril failed to send defendants any notice regarding defendants' security deposit, which at the time defendants left the premises was $1,469.20, inclusive of interest. Thus, the judge found that the landlord did not itemize the interest or deductions and did not notify the tenant "by personal delivery, registered or certified mail" in accordance with N.J.S.A. 46:8-21.1. The judge, therefore, concluded that "if the notice is not sent within 30 days, that ... you would double the entire amount of the security deposit. You can have deductions later from that, but you double the entire amount first."
*248 The judge attempted to distinguish Kang In Yi v. Re/Max Fortune Prop. Inc., 338 N.J.Super. 534, 537, 770 A.2d 738 (App.Div.), certif. denied, 169 N.J. 610, 782 A.2d 428 (2001), from the present case because in Kang it was not disclosed whether the landlord had violated the notice provision of the statute. The case, therefore, is controlling, according to the trial judge, only "in those situations where you were dealing strictly with the nonreturn of the security deposit, it does not deal with situations where there are violations of the notice provision of N.J.S.A. 46:8-21.1."

II.
We view this case differently from the trial judge. The judge found that defendants owed Lorril $3,780 in rent. This was calculated by doubling June's and July's rent under N.J.S.A. 2A:42-5. Although the holdover statute is of ancient origin, 200 Washington St. Corp. v. Beltone Hearing Service, 32 N.J.Super. 81, 84, 107 A.2d 828 (Law Div.1954), it has infrequently been construed. E.g., Chapman Mobile Homes, Inc. v. Huston, 226 N.J.Super. 405, 407, 544 A.2d 442 (Law Div.1988) (precluding eviction based on tenant's failure to adhere to her notice to terminate tenancy); Parkway, Inc. v. Curry, 162 N.J.Super. 410, 420, 392 A.2d 1260 (Cty.Ct.1978) (held that failure to pay double rent under the statute did not constitute sufficient grounds for summary eviction); Ricci v. Claire, 21 N.J. Misc. 266, 272, 33 A.2d 591 (Cty.Ct.1943) (holdover statute superseded by the Emergency Price Control Act of 1942 and its implementing regulations).
The statute provides in pertinent part that "[i]f a tenant ... shall give notice of his intention to quit the premises ... and shall not deliver up the possession of such real estate at the time specified in the notice, such tenant ... shall, from such time, pay to his landlord ... double the rent which he should otherwise have paid." N.J.S.A. 2A:42-5. The statute further provides that "double rent shall continue to be paid during all the time such tenant shall continue in possession after the giving of such notice." Ibid.
The tenants left in the middle of July, and the lease required rent to be paid on the first day of the month. Because the tenants were charged rent for all of July, the tenants were technically entitled to occupancy for the entire month, and the trial judge, in his judgment, doubled the rent due for June and all of July. The holdover statute, however, indicates that double rent shall be paid only for the period the tenant continues "in possession." No case has determined whether the double rent penalty may be assessed for a period when tenants are entitled to occupancy but are not in occupancy.
First, we note that the holdover statute is penal in nature and must be strictly construed. State v. Miner Industries, Inc., 177 N.J.Super. 153, 157, 425 A.2d 1074 (App.Div.1981) ("Statutes imposing penalties must be strictly construed."); Wagner v. Mayor Newark, 42 N.J.Super. 193, 210, 126 A.2d 71 (Law Div.1956) (Chief Justice, then Judge Weintraub specifically noted that the statute in question must be strictly construed), reversed, 24 N.J. 467, 132 A.2d 794 (1957).
Second, we believe that limiting the holdover penalty period to that period the tenants remain in the premises makes the most sense, given the legislative language and intent. In the beginning of the holdover statute, the Legislature references a tenant delivering up possession to the landlord by a specified date. While somewhat awkward, the common sense meaning of this language contemplates the tenant actually moving from the premises on the *249 specified date. This construction is also consistent with the policy behind the legislation of encouraging orderly transition of tenancies in a way that would most ensure seamless continuity by penalizing those tenants who thwart the landlord's ability to accomplish a seamless transition between tenants.
Later in the statute, when the Legislature imposes a double rent penalty for any tenant remaining "in possession," it is unlikely that they were referring to a different form of possession, because the statutory purpose to encourage the tenant to move from the premises on the specified date, or as close to that date as possible, remains constant throughout the legislation. State v. Thomas, 166 N.J. 560, 567-68, 767 A.2d 459 (2001) (recognizing that the Legislature would not generally use a different meaning for the same word in a legislative provision unless a different purpose was intended).
Because the statutory goal is to encourage the tenant to move as quickly as possible after the specified "moveout" date passes, the Legislature imposes double rent for each day thereafter the tenant remains in the premises. Thus, should the tenant wish to stop the double rent assessment, the tenant must move from the premises. If double rent were charged for the period the tenants were entitled to occupancy but not in occupancy, there would be little incentive for the tenant to vacate the premises as soon as possible after the designated "moveout" date passes.
Accordingly, we hold that double rent, pursuant to the holdover statute, may be collected only for the period the tenant remains in the premises, even if the tenant is liable for regular rent after the tenant actually vacates the premises. Thus, we conclude that the tenants in this matter should not have had their rent obligation for the last half of July doubled.
We calculate defendants' rental obligation in the following manner. We double June's rent ($945 × 2 = $1,890) and the first half of July's ($472.50 × 2 = $945). The tenant is obligated only for regular rent for the last half of July ($472.50) because the tenant was no longer in the premises and rent became due on the first of the month. The defendants total rent obligation under the lease and N.J.S.A. 2A:42-5 is, therefore, $3,307.50.
We reject Lorril's argument that it is entitled to regular rent for August and September because the tenants failed to provide the required sixty-day notice before they left on July 15th. The tenants gave a full sixty-day written notice when they intended to move on or before June 1, 2000. The parties' lease does not specifically state what occurs if the tenant provides a defective sixty-day "moveout" notice. Because the tenants failed to move on the specified date, the landlord's re-rental efforts were frustrated, and consequently the tenants became subject to "double rent" for the entire time they continued to live in the premises, June and half of July. This is the penalty the Legislature has established for failure to vacate in compliance with prior written notification.
The Legislature requires the old tenant to pay double rent, not only to encourage the tenant to move, but also to award the landlord rental income for the period after the tenant finally vacates the premises. The penalty thus also provides the landlord with rent during the period the landlord now must utilize to seek the next tenant. In this case, for example, the penalty ensured that the landlord had a rent-paid, one-and-one-half-month period in which to seek a new tenant.
*250 We need not consider whether any unlawful entry, N.J.S.A. 2A:39-1, would bar rent recovery for August and September. The landlord may not recover rent from defendants for August and September because the double-rent holdover statute, N.J.S.A. 2A:42-5, provides the sole penalty for the tenants' failure to move by the specified date, and the lease's "termination/moveout" notice provision does not clearly require a contrary result.

III.
From the $3,307.50 the tenants owe the landlord in rent and holdover penalty, however, we must subtract the $1,469.20 security deposit. This subtraction is undertaken before the security deposit is doubled because when a landlord fails to return a security deposit, and rent or other charges are also owed the landlord, we must determine whether the landlord has unlawfully withheld any of the tenant's security deposit.
The pertinent portion of the security deposit statute obligates the landlord to "return ... the sum [for security] so deposited plus the tenant's portion of the interest or earnings accumulated thereon, less any charges expended in accordance with the terms of a ... lease ... to the tenant." N.J.S.A. 46:8-21.1. The statute further provides that if the court finds a violation of the statute, "the court ... shall award recovery of double the amount of said moneys." Ibid.
We disagree with the trial court that the security deposit must be doubled before subtraction of the rental due. We explained in Kang In Yi, supra, 338 N.J.Super. at 538, 770 A.2d 738, that "the [statutory] reference to `said moneys', bespeaks a Legislative design that the doubling be of the net amount, i.e., the deposit plus interest less any permissible charges." "[D]amages under the statute are to be calculated based upon the total amount due [the tenant], not the amount of the initial deposit." Id. at 539, 770 A.2d 738. It is only the portion of the security deposit that is unlawfully held that can be doubled under N.J.S.A. 46:8-21.1. Here, because the tenants remaining rent obligation exceeded the security deposit, nothing was unlawfully withheld and nothing remained of the deposit to be doubled. When the subtraction is undertaken we find that tenants owe the landlord over one thousand more than the trial judge found. ($3,307.50 in rent and penalty -$1,469.20 in security deposit and interest = $1,838.30 owed to landlord).
Accordingly, we reverse the judgment and remand for entry of a $1,838.30 judgment in favor of Lorril.