<div style="border:1px solid">

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

</div>

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0421-23

MICHAEL MUELLER,

    Plaintiff-Respondent,

v.

RODNEY CONAWAY,

    Defendant-Appellant.

_____

Submitted January 21, 2025 – Decided March 21, 2025

Before Judges Jacobs and Jablonski.

On appeal from the Superior Court of New Jersey, Law Division, Somerset County, Docket Nos. DC-001104-23 and SC-000108-23.

Rodney Conaway, appellant pro se.

Steven B. Lieberman, attorney for respondent.

PER CURIAM

    This appeal arises from the most recent round of litigation in a landlord-tenant dispute between the parties consisting of eviction actions and associated

claims. For reasons that follow, we affirm in part the relief accorded to plaintiff and remand defendant's unadjudicated counterclaims to the trial court to ensure their full and fair consideration.

I.

The parties entered into a twelve-month lease agreement for a Section 8 subsidized apartment located in Bound Brook. The lease term began February 1, 2020 and was renewed annually through February 1, 2023. On January 12, 2022, defendant/tenant, Rodney Conaway, received a text message notification from landlord Michael Mueller's office manager demanding a rent increase of $145 effective February 1, 2022. The Section 8 program had approved an increase of just $35. Plaintiff attempted to attribute the extra portion of the increase to pet fees, as defendant had three dogs in his residence. Defendant objected to the fee, contending it constituted a violation of his Section 8-approved lease terms. He refused to pay the extra $110, prompting plaintiff to file two eviction complaints on grounds of unpaid rent and other purported leasehold breaches. The trial court dismissed the first-filed case as procedurally deficient, since the Section 8 program had not been notified of the eviction as required by law. N.J.S.A. 2A:18-61.2. The second-filed claim resulted in a stipulation of settlement, whereby defendant agreed to vacate the subject

2

premises no later than December 31, 2022. By his admission, defendant did not vacate the premises until March 9, 2023.

Following dismissal of the first-filed case, plaintiff filed a complaint in the Special Civil Part for property damage to the premises in December 2022, before defendant had vacated his apartment. Defendant filed a counterclaim for $20,000 in damages, alleging: (1) "disability, race, fair housing, emotional distress[,] and harassment, intimidation and retaliation"; (2) plaintiff improperly diverted common area utility usage to defendant's meter; (3) rent reimbursement or credit in connection with monies plaintiff received from the Somerset County Emergency Rental Assistance Program; (4) purported unlawful charges for defendant's three emotional support dogs; (5) violations of the Consumer Fraud Act related to the emotional support dogs; and (6) return of defendant's security deposit. In April 2023, plaintiff filed a Small Claims complaint for alleged unpaid rent from January to March 2023, cleaning charges, and court costs.

Plaintiff's complaint in Special Civil Part, defendant's counterclaim, and the Small Claims action were consolidated and heard by the trial court on June 26, 2023. However, while the trial court took limited testimony as to several of defendant's counterclaims, it neither made any explicit findings of fact, conclusions of law, nor rulings on any of the counterclaims with the single

3

exception of defendant's claim for return of his security deposit. On that claim, the court found that defendant had indeed failed to vacate the premises as promised, found him to be a holdover tenant, and entered judgment in favor of plaintiff in the amount of $2,913.59, including court costs. Defendant sought an amended judgment, which was interpreted by the trial court as a request for reconsideration and was denied. A timely appeal by defendant followed. Plaintiff has not cross-appealed any of the trial court's rulings.

II.

We are presented with mixed questions of fact and law. Our court gives deference to the supported factual findings of the trial court but reviews de novo the trial court's application of legal rules to the factual findings. State v. Pierre, 223 N.J. 560, 576 (2015); State v. Nantambu, 221 N.J. 390, 404 (2015); State v. Harris, 181 N.J. 391, 416 (2004). "The general rule is that findings by a trial court are binding on appeal when supported by adequate, substantial, credible evidence." Gnall v. Gnall, 222 N.J. 414, 428 (2015) (quoting Cesare v. Cesare, 154 N.J. 394, 411-12 (1998)). See State v. Camey, 239 N.J. 282, 306 (2019) ("[w]e will not disturb the trial court's findings; in an appeal, we defer to findings that are supported in the record and find roots in credibility assessments by the trial court"); Motorworld, Inc. v. Benkendorf, 228 N.J. 311, 329 (2017)

("[w]e review the trial court's factual findings under a deferential standard: those findings must be upheld if they are based on credible evidence in the record").

A.

As the trial court expressly ruled only as to plaintiff's claim concerning tenant's alleged holdover status, we briefly address that ruling. Generally, a tenant is defined as "[s]omeone who remains in possession of real property after a previous tenancy . . . expires[.]" Black's Law Dictionary 1769 (11th ed. 2019). "It is well-settled law in New Jersey that when a tenant continues to occupy a premises after the termination of a lease, his status becomes that of a month-to-month holdover tenant." Newark Park Plaza Assocs., Ltd. v. City of Newark, 227 N.J. Super. 496, 499 (Law Div. 1987); N.J.S.A. 46:8-10. The rights and duties of a holdover tenant are governed by the terms of the expired lease, absent a contrary agreement. Heyman v. Bishop, 15 N.J. Super. 266, 269 (App. Div. 1951).

The Legislature has imposed a double rent penalty for any tenant remaining as a holdover. N.J.S.A. 2A:42-5. The statute provides in pertinent part that "[i]f a tenant . . . shall give notice of his intention to quit the premises . . . and shall not deliver up the possession of such real estate at the time specified

in the notice, such tenant . . . shall, from such time, pay to his landlord . . . double the rent which he should otherwise have paid . . . ."  N.J.S.A. 2A:42-5.  The statute further provides that "double rent shall continue to be paid during all the time such tenant shall continue in possession after the giving of such notice."  Ibid.

The policy of the holdover legislation is to encourage the "orderly transition of tenancies in a way that would most ensure seamless continuity by penalizing those tenants who thwart the landlord's ability to accomplish a seamless transition between tenants."  Lorril Co. v. La Corte, 352 N.J. Super. 433, 439 (App. Div. 2002).  The double rent penalty is applied to each day the tenant holds over rather than to the month because "[i]f double rent were charged for the period the tenants were entitled to occupancy but not in occupancy, there would be little incentive for the tenant to vacate the premises as soon as possible . . . ."  Id. at 440.  The "holdover statute is penal in nature and must be strictly construed."  Id. at 439 (citing State v. Miner Industries, Inc., 177 N.J. Super. 153, 157 (App. Div. 1981)).

Here, our review of the record shows that the parties had a twelve-month lease agreement scheduled to terminate on February 1, 2023.  However, the duration of the lease was modified by consent when the parties entered a

6

settlement agreement in connection with a second summary disposition action on May 18, 2022. It is not disputed that, by terms of that settlement, defendant agreed to vacate the apartment on December 31, 2022. Plaintiff's bookkeeper testified to the monthly rent amount, the cost of court appearances, the cost of a warrant of removal, and the garbage removal fee incurred by plaintiff when defendant finally vacated on March 9, 2023. The bookkeeper further testified a new tenant was prepared to lease the apartment at a monthly rent of $3,200 beginning January 1, 2023, but instead moved in on April 1 due to defendant holding over until March 9, 2023.

Defendant cross-examined the bookkeeper on the issue of the garbage removal fee and nothing more. The trial court offered defendant opportunity to present his version of events. Defendant testified he paid rent for January and February 2023, conceding he did not pay any rent for March 2023, moving out on the ninth day of that month.

The trial court inquired of defendant, "Anything else before I ask [plaintiff's attorney] if he has any cross-examination?" Defendant did not have opportunity to respond or be heard on his counterclaim, because plaintiff's attorney immediately interjected that he had no cross-examination, and the court proceeded to ask its own questions relative to plaintiff's complaint only.

Thereafter, the entirety of defendant's counterclaim was never addressed directly, nor indirectly, by the court.

Rather, in rendering its decision, the trial court stated, "Defendant offers a somewhat convoluted defense that I was trying to follow, but that there were agreements made, et cetera." The court found defendant to be a holdover tenant and entered judgment in favor of plaintiff in the amount of $2,913.59, constituting unpaid rent at the higher market rate of $3,200 per month for January to March 2023 and costs, minus credit for defendant's security deposit. The trial court declined to apply double damages to the months defendant held over and did not award court appearance or garbage removal fees requested by plaintiff.

Defendant did not vacate by the agreed upon date, and so his tenancy was automatically converted to a month-to-month tenancy. N.J.S.A. 46:8-10. As mentioned, the parties were previously in court on the summary dispossess action and agreed to a settlement agreement. The terms of that agreement were recognized by a court order entered in connection with an order to show cause brought by plaintiff, seeking defendant's removal in January 2023. In an order denying plaintiff's application, the court found that "[t]he [s]ettlement [a]greement dated May 18, 2022 terminated the lease as of December 31, 2022.

Defendant[] may continue to pay rent and plaintiff must accept same until further court order."[1]  (emphasis added).  On its face, this language permitted defendant to remain lawfully in the unit if rent were timely paid and until further court order.  Defendant paid rent for January and February 2023 at the rate approved by Section 8, not at the rate plaintiff demanded.  Accordingly, based on the terms of the court order and based on defendant's continued payment of his portion of the Section 8 monthly rent agreement, we conclude defendant was not a holdover tenant for January and February 2023, as he was lawfully permitted to remain in possession so long as he paid rent.  Defendant's legal status is contrary to the trial court's determination that defendant was a holdover tenant for January and February 2023.  Therefore, we conclude the trial court erred when it found that defendant's security deposit could be used to offset plaintiff's judgment.  On remand, both parties may submit proofs, and the trial court may determine whether any of defendant's security deposit should be used to offset the alleged damages suffered by plaintiff due to inability to rent the premises for the month of March 2023.

---

[1] The January 27, 2023 order was submitted in defendant's appendix.  While the order was not presented to the trial court, this court takes judicial notice of prior court orders pursuant to N.J.R.E. 202(b).

## B.

Regarding March 2023, the record shows that defendant had provided written notice that he would vacate on March 1, 2023 but did not do so until March 9, 2023. Defendant may be deemed a holdover tenant for nine days in March 2023, and therefore potentially liable for double rent for that month or whatever time was needed to find a new tenant, provided that the landlord diligently sought to mitigate any damages that might have been incurred. Notwithstanding the foregoing, the trial court found that plaintiff's complaint did not seek double rent in its prayer for relief. Thus, the trial court did not award double damages. We do not disturb the trial court's findings of fact or conclusions of law in this respect.

## C.

The trial court made no findings of fact as to defendant's defenses and counterclaims, nor did the trial court articulate at any point during the trial that defendant's counterclaim was dismissed. The word "counterclaim" was mentioned only once during the entire proceeding, and that by plaintiff's counsel, who said, "We may have a defense, you know, in terms on – of the counterclaim, but . . . ."

Plaintiff's counsel maintains that the trial court gave defendant ample

10

opportunity to present his case, as evidenced by the following statement to defendant:

> THE COURT: This is your chance to give testimony. You can do that in a narrative form. You don't need to ask yourself questions. Just tell me what you want me to hear and any exhibits. You can remain there if you're comfortable doing that.

We disagree. Read in context, it is apparent that the trial court was here referring only to what defendant might have to say regarding plaintiff's cause of action along with any exhibits defendant had relevant to those claims. The trial court was not referring to testimony, nor exhibits, associated with defendant's multifaceted counterclaim.

Further regarding the unadjudicated aspects of the counterclaim, defendant argues that the trial court misunderstood their procedural status. For example, when determining the scope of the issues before it, the trial court stated, "I don't want to revisit that which has already been done." Our review of the record confirms the trial court misunderstood which issues needed to be adjudicated, believing only plaintiff's complaint and the status of defendant's security deposit needed to be tried. Consequently, we remand this matter for the trial court to adjudicate the entirety of defendant's counterclaim on the merits. Consistent with this opinion, the trial court shall also assess the amount

11

due to plaintiff resulting from defendant holding over for a period of nine days, and may adjust the amount due from defendant's security deposit accordingly. We intimate no views on the trial court's final disposition on remand.

Affirmed in part and remanded in part. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-0421-23