**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3574-24

PAULLEE DIOGENE,

    Plaintiff-Appellant,

v.

ANNMARIE JOHNSON-SMALL,

    Defendant-Respondent.

_____

Submitted January 27, 2026 – Decided February 5, 2026

Before Judges Perez Friscia and Vinci.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. DC-003994-25.

Paullee Diogene, self-represented appellant.

Annmarie Johnson-Small, self-represented respondent.

PER CURIAM

    Plaintiff Paullee Diogene, self-represented, appeals from a June 26, 2025

Special Civil Part order dismissing his breach of lease complaint against

defendant Annmarie Johnson-Small with prejudice after a bench trial. Having reviewed the record, plaintiff's arguments, and applicable law, we affirm.[1]

I.

On August 31, 2023, the parties entered a written lease extension for plaintiff to continue renting a residential apartment in West Orange. The lease was for a two-year term, beginning on October 1, 2023. Plaintiff's initial lease set a monthly rent of $1,925. He paid a security deposit of $3,850, consisting of two months' rent. The renewal lease increased plaintiff's rent to $2,033 a month for a two-year term. The lease required plaintiff to pay rent on the first of each month and imposed a $100 late fee if the rent was not paid by the fifth of each month. The lease further required plaintiff to "promptly notify the landlord of any . . . situation that may significantly interfere with the normal use of the [p]roperty."

After alleging constructive eviction based on a neighboring tenant's harassment, plaintiff vacated the apartment in December 2024, failed to pay December's rent, and remitted no further rent owed under the lease. Defendant deducted December's rent and repair costs from plaintiff's security deposit.

---

[1] Defendant did not file a merits brief in response to plaintiff's appeal but submitted a letter dated October 12, 2025, requesting plaintiff's appeal "be withdrawn and closed."

A-3574-24

In February 2025, plaintiff filed a complaint seeking defendant to return his full security deposit, refund the rent paid, and pay statutory double damages under N.J.S.A. 46:8-21.1. Defendant filed an answer and counterclaim,[2] alleging plaintiff breached the lease by vacating the apartment in December 2024. Plaintiff moved to dismiss defendant's counterclaim, which the trial court denied. Thereafter, plaintiff amended his complaint alleging damages of $9,011.54.

On June 26, 2025, the court presided over a bench trial in which plaintiff and defendant's daughter, Mariah Johnson-Small,[3] testified. Defendant was represented by counsel. At the beginning of the trial, the court provided the parties with an opportunity to "make . . . opening" statements. After defendant waived an opening statement and plaintiff briefly explained he was arguing "constructive eviction," a "wrongful[ly] withheld security deposit[]," and defendant breached "New Jersey laws," the court directed plaintiff to "begin [his] testimony."

---

[2] We note defendant filed an answer and misstated it was asserting a "[c]ross[-]claim" against plaintiff as opposed to a counterclaim.

[3] As defendant and Mariah Johnson-Small share the same surnames, we use Mariah's first name to avoid confusion. We intend no disrespect by this informality.

A-3574-24

Plaintiff testified that on November 10, 2024 a male tenant who lived downstairs threatened to "murder" him and "harassed [his] partner." He discussed the notice of "[c]onstructive eviction from the property," dated November 29, 2024, that he sent defendant, which alleged "untenable living conditions . . . caused by the actions of [the] tenant" who resided on the first floor. He asserted the notice described incidents of the "new tenants" "stomping and slamming . . . doors" and that on November 10 there was a "major issue," requiring a police response because one of the new tenants "threatened" to "get a gun" and harm plaintiff. Plaintiff's notice advised he was terminating the lease immediately and requested defendant to return November's rent and his security deposit.

Plaintiff maintained defendant wrongfully "withheld [the] security deposit, unlawful[ly] deduct[ed] [the cost of two] . . . smoke detectors," failed to keep his "security deposit . . . in[] an interest-bearing account," and did not return his security deposit by "certified mail." During his testimony, plaintiff requested to introduce an unsigned certification summarizing his version of events, which defendant objected to. The court instructed plaintiff to introduce evidence. After plaintiff requested to admit a police report into evidence to show he was "constructive[ly] evicted," the court denied plaintiff's application,

4

explaining it was hearsay and plaintiff's testimony on the issues would be considered. Plaintiff alleged the downstairs neighbor also engaged in "intimidation tactics," which were on his "Ring camera," and he had made various other "complaints [to defendant] from 2021 to 2024."

During cross-examination, plaintiff confirmed he rented the property from defendant in 2021 and renewed the lease for a two-year term, which expired in August 2025. Plaintiff conceded he vacated the property on December 23, 2024, approximately seven months before the lease ended. He also admitted to removing three smoke detectors because they made noise and had wiring issues but maintained he replaced one. Plaintiff believed he was permitted to vacate the property because he sent defendant the "[c]onstructive eviction notice" for "failing to protect their tenants."

Plaintiff testified defendant wrongfully required a security deposit of $3,850, equaling "two months['] rent" from the original lease and exceeding the one-and-a-half months' rent limit landlords were permitted to receive. He also alleged defendant violated the law by not keeping his security deposit in an "interest[-]bearing account," providing him interest, and returning his deposit by certified mail. Regarding the receipt of his remaining security deposit, he

A-3574-24

confirmed it was received by regular mail within thirty days of vacating the property.

Prior to trial, defendant signed a power of attorney for her daughter, Mariah, to act as an agent for the West Orange property. The power of attorney specifically authorized Mariah "to act . . . to manage the tenants, collect rents, and oversee all matters pertaining to" the property. It was undisputed that defendant sent plaintiff a letter in January 2025 explaining she was deducting plaintiff's December 2024 rent and the cost of two smoke detectors from his security deposit. Defendant further advised plaintiff she "did not charge [him] any late fees or penalties." She specifically stated, "I am not charging you for [the] early termination of your lease or removal of the garbage" left at the property.

Mariah testified plaintiff broke the lease by vacating the apartment without consent before the end of the lease term. She represented that plaintiff did not pay the remaining months of rent due under the lease. Mariah explained the apartment was not rented to another tenant but was listed on "multiple platforms."

At the conclusion of the trial, the court dismissed plaintiff's claims and defendant's counterclaim. The court found plaintiff vacated the property in

6

"December of 2024 midway through a two-year lease renewal[,] which expired in August of 2025." It further found plaintiff had sent defendant a notice alleging he was "harassed by a tenant below him . . . dated November [29,] 2024," but plaintiff did not provide "an opportunity . . . to cure[ and] simply stated that the lease was terminated immediately." The court reasoned that plaintiff failed to show a constructive eviction occurred because he did not prove "facts which would demonstrate that it caused him to not be able to use and enjoy the premises" and he was not permitted to "unilaterally" terminate the lease without providing sufficient notice.

Further, the court determined defendant appropriately returned plaintiff's "security deposit[,] less the amount reasonably withheld for the month of December 2024 and the cost of the smoke detector[s]," within the statutory thirty days of his vacating the premises. Regarding defendant's counterclaim, the court found she "waived her right to claim any damages for any months beyond the month of December 2024." The court explained defendant had sent plaintiff a letter "returning the balance of the security deposit[,] which appear[ed] to be in accord and satisfaction of one and all claims against each other." The court ultimately determined defendant "fulfilled the obligation to . . . plaintiff tenant to return the security deposit" owed.

On appeal, plaintiff contends the court committed the following errors: (1) dismissed plaintiff's claim that defendant wrongfully withheld his security deposit, violating N.J.S.A. 46:8-21.1; (2) disregarded plaintiff's constructive eviction claim supported by evidence of harassment, unsafe conditions, and the landlord's failure to act; (3) permitted Mariah to appear on behalf of defendant via a power of attorney filed one day before trial and without first-hand knowledge; (4) failed to consider plaintiff's evidence; (5) refused to allow plaintiff to make a preliminary statement and fully present his case; (6) allowed Mariah's unauthorized representation of defendant by accepting a defective power of attorney; (7) failed to apply the correct law as defendant collected an unlawful security deposit, failed to hold the deposit in an interest-bearing account, and returned it by regular mail; (8) disregarded plaintiff was constructively evicted due to harassment, threats, and defendant's inaction; (9) misinterpreted the conflicting lease agreements and failed to address evidentiary discrepancies; (10) ignored direct evidence that the apartment was re-rented, rendering withheld rent unjustified; (11) failed to apply the holding in Gottdiener v. Mailhot,[4] which found constructive eviction occurred based on the landlord's failure to maintain habitable conditions; (12) failed to consider

---

[4] 179 N.J. Super. 286 (App. Div. 1981).

plaintiff's partner being inappropriately touched by a neighbor as a basis for constructive eviction; and (13) disregarded defendant's failure to return the security deposit by certified mail.

II.

We "review a 'trial court's determinations, premised on the testimony of witnesses and written evidence at a bench trial, in accordance with a deferential standard.'" Nelson v. Elizabeth Bd. of Educ., 466 N.J. Super. 325, 336 (App. Div. 2021) (quoting D'Agostino v. Maldonado, 216 N.J. 168, 182 (2013)); Mountain Hill, L.L.C. v. Township of Middletown, 399 N.J. Super. 486, 498 (App. Div. 2008) (noting appellate courts "do not weigh the evidence, assess the credibility of witnesses, or make conclusions about the evidence"). We will "'not disturb the factual findings and legal conclusions of the trial judge' unless convinced that those findings and conclusions were 'so manifestly unsupported by or inconsistent with the competent, relevant[,] and reasonably credible evidence as to offend the interests of justice.'" Griepenburg v. Township of Ocean, 220 N.J. 239, 254 (2015) (quoting Rova Farms Resort v. Invs. Ins. Co. of Am., 65 N.J. 474, 484 (1974)). "[A] trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Rowe v. Bell & Gossett Co., 239 N.J. 531, 552 (2019)

9

(quoting Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

A "lease is a contract . . . which sets forth [the parties'] rights and obligations to each other in connection with [a] temporary grant of possession of [one party's] property to [the other party]." Town of Kearny v. Disc. City of Old Bridge, Inc., 205 N.J. 386, 411 (2011). "It is well-settled that '[c]ourts enforce contracts "based on the intent of the parties, the express terms of the contract, surrounding circumstances[,] and the underlying purpose of the contract."'" Barila v. Bd. of Educ. of Cliffside Park, 241 N.J. 595, 615-16 (2020) (alteration in original) (quoting In re County of Atlantic, 230 N.J. 237, 254 (2017)).

Our Supreme Court held in Marini v. Ireland that when a landlord rents a residential property there is an implied warranty of habitability, which is "a covenant that at the inception of the lease, there are no latent defects in facilities vital to the use of the premises for residential purposes because of faulty original construction or deterioration from age or normal usage." 56 N.J. 130, 144 (1970). The warranty is "a covenant that these facilities will remain in usable condition during the entire term of the lease." Ibid. "In performance of this covenant the landlord is required to maintain those facilities in a condition which

10

renders the property livable." Ibid. Under the warranty, "any act or omission of the landlord . . . , which renders the premises substantially unsuitable for the purpose for which they are leased, or which seriously interferes with the beneficial enjoyment of the premises, is a breach of the covenant of quiet enjoyment and constitutes a constructive eviction of the tenant." Reste Realty Corp. v. Cooper, 53 N.J. 444, 457 (1969).

Before a tenant may allege a breach of the covenant of habitability and seek the application of the doctrine of constructive eviction, the tenant "must notify the landlord of the defective condition and afford the landlord the opportunity to repair." Chess v. Muhammad, 179 N.J. Super. 75, 77 (App. Div. 1981) (quoting Marini, 56 N.J. at 146). "Not every defect or inconvenience will be deemed to constitute a breach of the covenant of habitability." Berzito v. Gambino, 63 N.J. 460, 470 (1973). Further, "tenants are not entitled to an abatement [of rent] when the landlord repairs the defective condition within a reasonable time after learning of its existence." Chess, 179 N.J. Super. at 80.

The New Jersey Rent Security Deposit Act (SDA), N.J.S.A. 46:8-19 to -26, provides that a landlord may not require at the initial lease a security deposit that exceeds one-and-a-half times the amount of one month's rent. N.J.S.A. 46:8-21.2. The SDA "recognizes that the security deposit remains the tenant's

11

money, although it is designed to provide some protection from loss to the landlord."  Hale v. Farrakhan, 390 N.J. Super. 335, 342 (App. Div. 2007) (quoting MD Assocs. v. Alvarado, 302 N.J. Super. 583, 586 (App. Div. 1997)).

A landlord must hold the security deposit in a separate interest-bearing account and notify the tenant, in writing, where the funds are being held within thirty days of the receipt of the security deposit.  N.J.S.A. 46:8-19(b) to (c). Further, the SDA requires "[w]ithin [thirty] days after the termination of the tenant's lease or licensee's agreement, the owner or lessee shall return . . . the sum so deposited . . . less any charges expended in accordance with the terms of a contract, lease, or agreement, to the tenant."  N.J.S.A. 46:8-21.1.

We have held that a landlord, pursuant to N.J.S.A. 46:8-21.1, is mandated to pay a penalty of "double the net amount of money wrongfully withheld from the tenant by the landlord."  Kang in Yi v. Re/Max Fortune Props., Inc., 338 N.J. Super. 534, 538 (App. Div. 2001).  "Once a court finds that a landlord wrongfully withheld all or a portion of a security deposit, the tenant cannot reasonably be entitled to statutory damages exceeding twice the amount wrongfully withheld."  Ibid.  Thus, the "tenant's damages under the statute are to be calculated based upon the total due him [or her], not the amount of the initial deposit."  Id. at 539.  When there is a dispute over whether the tenant

12

violated his obligations under the lease, the court is "required to 'determine the amount of th[e] offsets and, if they [a]re greater than the security deposit withheld, there [is] no deposit to return to the tenant.'" Reilly v. Weiss, 406 N.J. Super. 71, 81 (App. Div. 2009) (first alteration in original) (quoting Penbara v. Straczynski, 347 N.J. Super. 155, 160-61 (App. Div. 2002)).

## III.

We first address plaintiff's related contentions that the court erroneously determined he failed to substantiate a claim of constructive eviction. He argues that his notice to defendant, advising that the downstairs tenant had harassed him and his partner, sufficiently established his right to terminate the lease because his quiet enjoyment of the property was interrupted. The court found plaintiff's notice dated November 29, 2024 was insufficient to support a constructive eviction claim because defendant was not afforded an adequate opportunity to cure the alleged disturbance caused by the downstairs tenant. After our review of the record, we are convinced the court's decision is substantially supported by credible evidence.

Plaintiff's reliance on our holding in Gottdiener to support his constructive eviction argument is misplaced. In Gottdiener, we affirmed the trial court's finding of constructive eviction based on the tenants' neighbor making the

"premises substantially unsuitable for ordinary residential living," because there was "[a]dequate credible evidence in the record support[ing] the conclusion that [the tenants] waited a reasonable time in order to determine whether [the landlord] would solve the problem, and left only after it was apparent that [the landlord] would not take any further measures." 179 N.J. Super. at 293. Unlike the tenants in Gottdiener, plaintiff in the present case did not provide defendant with a "reasonable time" to address and cure his claims of harassment by the downstairs tenant. The record supports the court's determination that plaintiff failed to prove a constructive eviction claim because he did not provide defendant a reasonable period of time to address his allegations.

We also reject plaintiff's argument that the court improperly refused to consider his "submitted sworn statement" and "preliminary explanation of facts" during the trial. We discern no error by the court in denying plaintiff's request to consider his written explanation as an opening statement and evidence. See R. 1:7-1(a) (stating parties are permitted to make an opening statement "[b]efore any evidence is offered at trial"); see also N.J.R.E. 611 (stating "[t]he court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence"). Further, plaintiff's argument that he was not afforded "fair treatment" as a self-represented litigant is unavailing. We have held that

14

"a self-represented litigant is 'not entitled to greater rights than [a] litigant[] . . . represented by counsel.'" Mims v. City of Gloucester, 479 N.J. Super. 1, 4 (App. Div. 2024) (alteration in original) (quoting Ridge at Back Brook, LLC v. Klenert, 437 N.J. Super. 90, 99 (App. Div. 2014)). "[A] self-represented litigant is held to the same standards of compliance with our Court Rules." Ibid. The record demonstrates the court fully comported with the Court Rules and afforded plaintiff a meaningful opportunity to be heard.

Plaintiff's assertion that Mariah was not permitted to testify because she "act[ed] in a quasi-representative capacity" also lacks merit. First, Mariah appeared as defendant's agent and did not appear to represent defendant, who had counsel. While plaintiff initially objected to her appearing as an agent for defendant, he withdrew his objection after acknowledging defendant had signed a power of attorney authorizing Mariah to act on defendant's behalf regarding the rental property. Thus, the court did not err in permitting Mariah's testimony.

Plaintiff next argues that the court failed to correctly apply the SDA because defendant collected a security deposit of two months' rent, which exceeded the permitted amount of one-and-a-half months' rent, and did not provide him interest. He also contends defendant failed to send the returned portion of his security deposit by certified mail but admits he timely received

the remaining deposit by regular mail. Under N.J.S.A. 46:8-21.1, the court may award a tenant double damages if the landlord fails to return the security deposit owed. We held in Reilly that "to the extent plaintiffs' security deposit [held by the landlord] exceeded the SDA's permitted limit, [and an] amount was wrongfully withheld when the leasehold terminated, . . . plaintiffs were entitled to the statutory remedy of double the amount" on the amount to be returned. 406 N.J. Super. at 84. However, a tenant is "not accord[ed] the 'doubling' remedy provided by N.J.S.A. 46:8-21.1 if in fact the tenant has violated his [or her] obligations under the lease." Id. at 80. We also recognized that when "'the tenants['] remaining rent obligation exceeded the security deposit, nothing was unlawfully withheld and nothing remained of the deposit to be doubled.'" Id. at 81 (quoting Lorril Co. v. La Corte, 352 N.J. Super. 433, 442 (App. Div. 2002)).

As we have already stated, the court did not abuse its discretion in finding plaintiff wrongly terminated his lease prematurely as he was not constructively evicted and was therefore liable to defendant for the remaining rent owed starting from December 2024 under the lease, and the cost of the two removed fire detectors. The court then correctly reasoned that while defendant had a claim for damages for the remaining seven months of rent, she waived the right to collect the additional back rent plaintiff owed based on her December 2024

16

letter. Defendant reduced plaintiff's security deposit by the $2,033 owed for December's rent and $138.45 for the replacement detectors. Further, she timely returned plaintiff the remaining $1,678.45 from his security deposit with a written explanation. See N.J.S.A. 46:8-21.1.

Thus, based on the present facts, we are convinced the trial court did not abuse its discretion in finding plaintiff was not entitled to any interest and SDA penalty because plaintiff owed defendant a greater amount under the lease. See Jaremback v. Butler Ridge Apartments, 166 N.J. Super. 84, 89 n.1 (App. Div. 1979) (explaining that when a trial court finds a "penalty is appropriate under the statute, the only item which should be doubled is the net amount due to the tenant on the security deposit and interest, after deduction of the charges due to the landlord"). To the extent that we have not addressed plaintiff's remaining contentions, it is because they lack sufficient merit to be discussed in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-3574-24